## W. B. HINKLE, ADMR., v. AARON LANDIS.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF BUCKS COUNTY.

Argued February 15, 1889—Decided January 6, 1890.
[To be reported.]

1. There has always been a marked distinction between the power of a married woman and that of her husband over their respective estates; while he may dispose of his personalty to whom he pleases, subject only to such restraints as the law, in favor of the wife, has positively imposed upon him, she, on the contrary, has such powers of disposition, only, as the statute law has conferred upon her.

2. Under the statutes prior to the Married Person's Property Act of June 3, 1887, P. L. 332, a married woman was not invested with the same control over her personal property that her husband had over his; that legislation being intended, almost without exception, for the protection of her estate against her husband and his creditors, and not to enable her to dispose of it without his consent.

(a) A married woman, the holder of notes to the amount of $1,180 given to her by her brother-in-law for money lent him, surrendered them in 1885, and, without the knowledge and consent of her husband, received

in their place a bond providing that the obligor should pay her annually during her life interest at the rate of five per cent per annum upon $1,180, and that the principal should never become due and payable:

3. The fact that under the bond the obligee was to receive and enjoy during her life the interest upon the principal sum named therein, did not render the transaction a testamentary disposition of the money in any proper sense, but it was evidently intended as an absolute transfer of the sum named; and such transfer the wife had no right to make without the knowledge and consent of her husband.

4. Nothing in the nature of the transaction indicating that it was intended as a bona fide purchase of an annuity, it must be presumed that the obligor knew that the wife was acting ultra vires; and, in an action by her administrator for said principal, a point to the effect that if the bond was designed to deprive her husband of his rights as such after her death, the plaintiff should recover, should have been affirmed.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 406 January Term 1888, Sup. Ct.; court below, No. 8 January Term 1886, C. P.

On December 12, 1885, Elias Fellman, administrator of the estate of Lavina Fellman, deceased, filed a declaration consisting of the common counts in assumpsit, in an action against Aaron Landis. The defendant pleaded non-assumpsit and payment with leave. Subsequently, the death of Elias Fellman being suggested, William B. Hinkle, administrator de bonis non of Lavina Fellman, was substituted as plaintiff.

At the trial on December 14, 1887, the following facts were shown: Lavina Fellman, deceased, was the wife of Elias Fellman, the original plaintiff. She had money in her own right, and some years before her death, placed a part of it in the hands of the defendant, who was her brother-in-law. Being called upon the stand by the plaintiff, the defendant testified that $900 of that money was handed to him, or his wife, by Mrs. Fellman in the presence of her husband, she saying that she wanted to have the interest on it as long as she lived and afterward it should be theirs, but told the witness to draw up a note for it; that her husband took no part in the conversation respecting the money, but "undoubtedly he heard what she said." The defendant's wife also testified to substantially the same conversation. Within a few days, the defendant gave his note to Mrs. Fellman for the $900. On April 1, 1885,

the defendant received back from Mrs. Fellman, without the knowledge of her husband, his $900 note and another note for $280, previously given, substituting therefor his bond in the sum of $2,360, conditioned for the payment of "the interest at the rate of five per cent per annum upon the principal sum of $1,180, annually, during all the term of the natural life of the said Lavina Fellman, on the first day of April of each year; provided, however, that the said principal sum of $1,180 shall never become due and payable." Mrs. Fellman died intestate on October 6, 1885. No payment of interest on the bond was ever made.

At the close of the testimony the court, YERKES, P. J., charged the jury as follows:

This case has been heard by the court. It is admitted on both sides that it is a question of law, which may be considered to be raised by the points which the counsel for the plaintiff have presented in the case, which are as follows:

1. That if the bond of the defendant, Aaron Landis, to Lavina Fellman, the plaintiff's intestate, was given for the purpose of securing to her the interest of her money, in the hands of Landis, during her life, and with the design of depriving her husband of his right to it after her death, then the transaction constituted a fraud upon the rights of the husband, and the money may be recovered, in the present action, by her administrator.

Answer: Refused. In the opinion of the court there cannot be a recovery, upon the facts of this case, of the principal sum of the bond.[1]

[The jury is directed to render a verdict in favor of the plaintiff for the interest at the rate of five per cent per annum upon the amount of the bond, from the first day of April, 1885, down to October 6, 1885, the date of the death of the decedent. The amount is admitted to be $30.48.] [3]

2. That the bond in question constituted a testamentary disposition of a part of the estate of the obligee, which is not binding upon her husband.

Answer: We give the same answer to this point that we gave in answer to the plaintiff's first point.[2]

The jury rendered a verdict in favor of the plaintiff for $30.48. A rule for a new trial having been taken, after argument thereof the court, YERKES, P. J., filed the following opinion:

The plaintiff takes the position that the disposition which Lavina Fellman, in her lifetime, made of the money in Mr. Landis's hands was a fraud upon the marital rights of her husband, and that therefore the plaintiff is entitled to recover.

The object of our legislation, apparently, has been to place the rights of husband and wife, in the estates of each other, upon an equal footing, and the result of the several acts of assembly seems to be that the wife's power over her separate estate is as complete as that of the husband over his estate.

In Pringle v. Pringle, 59 Pa. 281, Justice SHARSWOOD, speaking of donations inter vivos, said: "In our law no such gift, otherwise valid, can be impeached as a fraud upon a man's wife or children. They have no legal right to any part of his goods, and, therefore, no fraud can be predicated of any act of the husband or parent to deprive them of the succession."

In Perry's App., 7 Cent. R. 164, it appears that F. H. Perry died intestate on April 14, 1885, having in the preceding February or March devested himself of very nearly all his property, by transferring bonds, etc., to his children. The master found that he did this under the impression that life was short, and having in view the devesting of any distributive share which his widow might have in the articles of personal property mentioned, in case she survived him. It was decided by the master that the gifts were valid, and that the wife could not claim any distributive share under the intestate laws. The case was appealed and reviewed on other grounds, and this decision was complained of by the defendant in error, but the Supreme Court did not appear to consider the subject of complaint worthy of notice in their opinion.

A father transferred to himself, as trustee of his children, certain securities which he had purchased from a fund set aside for the purpose, and in his will gave directions for the control of the trusts. Mr. Justice STERRETT said: "It is scarcely necessary to add that such gifts, made in good faith as these were, cannot be impeached on the ground that they

are a fraud upon the rights of the widow. Nothing is better settled than the power of a husband to dispose of his personal property, in good faith, by gift or otherwise, during coverture, free from all post-mortem claims thereon by his widow:" Dickerson's App., 115 Pa. 198.

We think the principles of law which controlled these decisions apply to this case. We are unable to see any valid reason why the post-mortem rights of the husband should stand upon a different plane from those of the wife.

There was a contractual relation between the parties to the bond, which cannot be overlooked. While it was true the defendant agreed to pay interest, the agreement that the principal sum should never become due and payable was as much a part of the consideration for the interest as was the use of the money. It does not follow that he would have agreed to take the money, or to pay the rate stipulated for the use alone.

It not being fraudulent for Mrs. Fellman to dispose of her personal property as she saw proper, and there being no sufficient evidence of other fraud in the case, the contract was valid.

And now, to wit, February 27, 1888, the motion is overruled and a new trial refused.

Thereupon the plaintiff took this appeal, assigning for error:
1, 2. The answers to plaintiff's points. [1] [2]
3. The part of the charge embraced in [ ] [3]

*Mr. Richard Watson* (with him *Mr. Paul H. Applebach* and *Mr. Mahlon H. Stout*), for the appellant:

1. The designed effect of the arrangement between Mrs. Fellman and the defendant was to secure to her the use of her money during her life, and at the same time to deprive her husband of his right to the share in its distribution which the law gives him at her death. It was also designed, apparently, to defeat the state's claim to collateral inheritance tax, or at least such would be its effect if successfully carried out. But the opinion of the court below, stating the result of the several statutes to be that the wife's power over her separate estate is as complete as the husband's power over his estate, does not present a correct view of the law. While the husband has

complete power over his personal property, subject only to such restraints in favor of his wife as the statute law may impose upon him, the wife's powers are such only as the statute law has given her; and, if she seeks to dispose of her property, free from the restraint of her husband, she must show her power to do so, plainly expressed in the written law.

2. The statutes on the subject, or at least all of them down to the date of bringing this suit, were designed to protect the wife's property against her husband and against her own improvidence, rather than to give her the right to make an absolute disposition of it. Powers were conferred from time to time, such as were necessary or convenient for its preservation or management, but no act bestowed upon her, save in exceptional cases, power to give it away without her husband's consent: Haines v. Ellis, 24 Pa. 253. Keen v. Philadelphia, 8 Phila. 49, directly decided this in the case of a city loan, and probably led to the passage of the act of March 18, 1875, P. L. 24. So, before the act of May 25, 1878, P. L. 152, a wife had no power to sell or assign a mortgage or judgment: Moore v. Cornell, 68 Pa. 320. Even her earnings were not subject to her control prior to the act of April 3, 1872, P. L. 35. She has such powers of disposition only as the statutes give her, and from the bestowal of power in particular cases no inference of its existence in other cases follows: Leiper's App., 108 Pa. 377.

3. The relation between husband and wife, before marriage, is one of confidence: Shea's App., 121 Pa. 302; Bierer's App., 92 Pa. 265; Kline's Est., 64 Pa. 122; Kline v. Kline, 57 Pa. 120. A disposition by a woman, in contemplation of marriage, of either real or personal property, without the consent of her intended husband, is not binding on him: Duncan's App., 43 Pa. 67; Belt v. Ferguson, 3 Gr. 289. As remarked by Lynd, J., in Keen v. Philadelphia, 8 Phila. 49, surely the rights of an actual husband are not less than those of an intended one. The cases cited in the opinion of the court below, Pringle v. Pringle, 59 Pa. 281; Perry's App., 7 Cent. R. 164, and Dickerson's App., 19 W. N. 121, relate merely to the husband's power over his own property, and have no application to the case of an attempted disposition by the wife of her property in her husband's lifetime. Nor do Towers v. Hagner, 3 Wh. 48, Hinney v. Phillips, 50 Pa. 382, and kindred cases, apply, as they are cases

in which a power of disposition was conferred by a deed of trust or settlement.

4. The only way in which money can be put to use is by investing or lending it. When lent, the interest is the use of the money itself. When, therefore, Mrs. Fellman took the defendant's bond for the payment of interest on her money, she retained the use of the money during her life, and thus retained the ownership of the principal during the same length of time, and her gift of the fund would take effect only at her death. This position is sustained by the decisions holding that a gift of the profits or produce of property is a gift of the thing itself: Van Rensselaer v. Dunkin, 24 Pa. 252; Adamson v. Armitage, 19 Ves. 416; Garret v. Rex, 6 W. 14; Campbell v. Gilbert, 6 Wh. 72. The commonwealth's right to collateral inheritance tax is not defeated by such an arrangement as this: Reish v. Commonwealth, 106 Pa. 521; Seibert's App., 110 Pa. 329; DuBois' App., 121 Pa. 368; Conwell's Est., 22 W. N. 183. No more should it defeat the rights of the husband.

*Mr. George Ross* (with him *Mr. Henry Lear* and *Mr. L. L. James*), for the appellee:

1. By the law, as it existed at the time of the transaction, Mrs. Fellman had power to make a gift of this money. Under the act of April 11, 1848, P. L. 536, she held her separate property as if settled to her sole and separate use during coverture: Bear v. Bear, 33 Pa. 525. Her rights under such a settlement would have included the right to dispose of the money as she pleased: Towers v. Hagner, 3 Wh. 48. The act of 1848 takes the place of a marriage settlement in all cases, at least as to property passing by delivery, and the right to " own, use and enjoy " implies and includes the full and free right of disposal: Hinney v. Phillips, 50 Pa. 382; Cridge v. Hare, 98 Pa. 561. See also: McKennan v. Phillips, 6 Wh. 571; Fisher v. Filbert, 6 Pa. 61; Williams's App., 47 Pa. 307; Rose v. Latshaw, 90 Pa. 238; Lahr's App., 90 Pa. 507; Kincade v. Cunningham, 118 Pa. 501. The acts of March 18, 1875, P. L. 24, and May 25, 1878, P. L. 152, were passed to dispel doubts as to the power to dispose of personalty not passing by delivery but requiring the formality of an assignment. Can it

be pretended that a transfer under one of those acts is invalid, if made without the husband's knowledge? Yet such is the logical result of the appellant's position.

2. The gift of the money to Aaron Landis was not a testamentary disposition. Its enjoyment by him was not postponed or subject to any condition or contingency. He was entitled to the immediate use of it, and all that it produced belonged absolutely to him. His obligation to pay his sister an annuity equal to five per cent upon the same sum, was a distinct, independent obligation. He did not borrow the money. Having delivered possession of the money, Mrs. Fellman could not repudiate the gift she made of it: Brown's App., 94 Pa. 362. The gift was neither revocable nor testamentary: Frederick's App., 52 Pa. 338; Ritter's App., 59 Pa. 9; Greenfield's Est., 14 Pa. 489; Book v. Book, 104 Pa. 240. Nor would the reservation of an interest during life in the proceeds of the money imply a right to revocation: Fellows's App., 93 Pa. 470. And the cases cited upon the subject of collateral inheritance tax throw no light upon the question here. If the arrangement were fraudulent as to the state, it would not follow that it is invalid as to other parties: Tritt v. Crotzer, 13 Pa. 451. Moreover, there is no evidence of an endeavor to evade that tax.

3. It is true that a woman may not dispose of her property in contemplation of marriage, to the injury of her intended husband's rights; but the same rule is applicable to antenuptial conveyances by a man: Bispham's Eq., 316; Kline v. Kline, 57 Pa. 120; Campbell's App., 80 Pa. 298; and it is equally true that after marriage the husband's power of disposition is absolute as to personalty: Pringle v. Pringle, 59 Pa. 281; Ellmaker v. Ellmaker, 4 W. 91; Perry's App., 7 Cent. R. 164; Dickerson's App., 115 Pa. 198. Why should not a wife have equal power under the act of 1848? If a gift by the husband is not a fraud upon her, why should a gift by her be treated as a fraud upon him? This suit was brought, not by the defrauded husband as such, but by the administrator of the wife. How, then, can the plaintiff occupy a stronger position than she did, and recover upon a bond whose very terms show that nothing is due? We rest our case, however, on higher grounds than a mistake in the forum or in the proceedings.

OPINION, MR. JUSTICE STERRETT:

Plaintiff's intestate, Lavina Fellman, wife of Elias Fellman, had money in her own right, which she loaned at different times to the defendant, Aaron Landis, and took his notes therefor, payable to herself. In April, 1885, Landis's bond, in the penal sum of $2,360, was substituted for the notes, which then aggregated the sum of $1,180. The condition of the bond was that the obligor should pay to Mrs. Fellman, " her certain attorney, executors, administrators, and assigns, the interest, at the rate of five per cent per annum, upon the principal sum of $1,180, annually, during all the term of the natural life of the said Lavina Fellman, on the first day of April of each year: provided, however, that the said principal sum of $1,180 shall never become due and payable." This was done without the knowledge or assent of the obligee's husband.

On October 6th following, Mrs. Fellman died, intestate ; and, letters of administration having been granted to her husband, he demanded from Landis the money originally loaned, as above stated, claiming that it belonged to his deceased wife's estate ; but Landis refused to pay, and thereupon this suit was brought. Before the cause was called for trial the plaintiff died, and the administrator de bonis non, etc., was substituted. On the trial two points for charge were submitted, viz.:

" 1. That, if the bond of defendant, Aaron Landis, to Lavina Fellman, the plaintiff's intestate, was given for the purpose of securing to her the interest of her money, in the hands of Landis, during her life, and with the design of depriving her husband of his right to it after her death, then the transaction constituted a fraud upon the rights of the husband, and the money may be recovered, in the present action, by her administrator.

" 2. That the bond in question constituted a testamentary disposition of a part of the estate of the obligee, which is not binding upon her husband."

The learned judge not only refused to affirm either of these points, but he instructed the jury as follows: " In the opinion of the court, there cannot be a recovery, upon the facts of this case, of the principal sum of the bond. The jury is directed to render a verdict in favor of the plaintiff for the interest, at

the rate of five per cent per annum, upon the amount of the bond, from the first day of April, 1885, to October 6, 1885, the date of the death of the decedent. The amount is admitted to be $30.48." These rulings of the court constitute the three specifications of error now before us.

As stated by the learned judge in his general charge, it was conceded that the case hinged on the questions of law suggested by plaintiff's points. There was no error in refusing to affirm the second point. The bond in question cannot be construed as a testamentary disposition of the principal sum therein referred to. While Mrs. Fellman is named in the bond as payee of the five per cent annually on said principal sum, during her life, it was not signed by her, nor does it appear that she ever signed any paper in relation to the transaction. The notes evidencing the preceding loans were surrendered, and the bond accepted in lieu thereof. In no proper sense can the transaction be considered a testamentary disposition of the money. The second specification is not sustained.

The facts of which the first point is predicated were so clearly and conclusively shown by the evidence that they were not seriously controverted. At least, the evidence is quite sufficient to have warranted the jury in finding the facts as stated in the point. In view of that, we are of opinion that it should have been affirmed. The transaction was evidently intended as an absolute transfer of the sum named, $1,180, by Mrs. Fellman to the defendant, in consideration of his obligating himself to pay her $59 on the 1st day of April annually during her natural life. This she had no right to do, without the knowledge and consent of her husband; and it must be presumed the defendant knew she was acting ultra vires. The amount he agreed to pay annually was less than the legal rate of interest on the principal sum, which was never to become due and payable. There is nothing whatever in the nature of the transaction to indicate that it was intended as a bona fide purchase of an annuity.

It is a mistake to assume that, under the law as it then was, Mrs. Fellman had the same control over her personal property that her husband had over his. At common law, a married woman is incapable of binding herself or her property by any contract of her own. That disability springs from the unity of

the marital relation. She is one with her husband; and, in law, her existence is merged in his, so far as business and property relations are concerned. Her common-law disabilities, and the marital rights of her husband, as to her property, real and personal, are so familiar that it is unnecessary to specify them more particularly. It is true that great changes in that regard have been effected by what is familiarly known as our married woman's act, and the supplements thereto; but, almost without exception, that legislation has been so construed as to suppress the mischief against which it was intended to provide, without investing married women with the absolute right to dispose of their separate estates as though they were femes-sole: Pettit v. Fretz, 33 Pa. 118, 123. As was said in Haines v. Ellis, 24 Pa. 253, the object of the act of 1848 "was to protect her [the wife's] estate from being incumbered or conveyed by her husband, or taken by his creditors, against her consent, and not to enable her to sell, incumber, or give it away, without his consent. The intention was that she should ' own, use, and enjoy ' it. It was not necessary to the purposes of the act that she should be allowed to part with her estate, without the advice and consent of her husband. On the contrary, such a construction of the act would tend to defeat the wise and benevolent intention of the legislature." That principle of construction has been adhered to in all our cases on the subject. In Leiper's App., 108 Pa. 377, it is recognized as a settled principle " that a married woman may sell or give her personal estate to her husband, or, with his consent, to a stranger." There has always been a marked distinction between the power of a married woman and that of her husband over their respective estates. He has complete control over his personal property, and may dispose of it as he pleases, subject only to such restraints in favor of his wife as the law has imposed. She, on the other hand, has such, and only such power over her personal property as the statute law has conferred. The husband's marital rights to his wife's property remain as they were at common law, except in so far as they have been curtailed by statute. There is nothing in our legislation on the subject that authorizes a married woman to dispose of her personal property without the knowledge and consent of her husband, as was attempted in this case. It follows from what has been said that the learned judge erred

in not affirming plaintiff's first point, and also in charging as complained of in the third specification.

Judgment reversed, and a venire facias de novo awarded.