TEMPLETON, Executor, Appellant, vs. BUTLER, Respondent.

*March 23—April 17, 1903.*

*Wills: Testamentary declaration: Agreement to cancel notes: Consideration: Evidence.*

1. A writing stating, "This is to certify that the notes held by me against [defendant] shall be null and void after my death and noncollectible," was upon its face merely testamentary, and was revoked by a subsequent will disposing of all the testator's personal property.

2. The question being whether, as claimed by defendant, the testator had agreed, in consideration of defendant's promise to pay interest upon the notes up to the time of his father's (the testator's) death and to refrain from paying the principal before that time, that the notes should become canceled at death of the testator, the evidence (stated in the opinion) is *held,* as matter of law, insufficient to show any binding agreement to that effect.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

Suit upon two notes held by William Butler, plaintiff's testator, in his lifetime—one dated September 5, 1895, for $290, due in one year, with five per cent. interest; the other dated April 13, 1897, for $1,465, due in three years, with five per cent. interest.  William Butler died February 25, 1900.  The defense consisted, first, of an allegation that these moneys were an advancement to the defendant, a son of the testator; secondly, that on October 13, 1898, in consideration of a promise on the part of the defendant to pay interest until the death of William Butler, he executed a writing in the words following:

"Lisbon, Wis., Oct. 13, 1898.
"This is to certify that the notes held by me against *A. L. Butler* shall be null and void after my death and noncollectible."

A special verdict was taken, wherein the jury found that the testator executed and delivered to the defendant the above paper writing, as claimed by the defendant; second, that he so executed and delivered it with knowledge of its terms and conditions; whereupon judgment was entered for the plaintiff for the unpaid interest up to the death of the testator, for which judgment had been tendered, and in favor of the defendant for costs subsequent to such tender; from which judgment the plaintiff appeals.

For the appellant there was a brief by *Tullar & Lockney*, and oral argument by *D. S. Tullar*.

For the respondent there was a brief by *Ryan, Merton & Newbury*, and oral argument by *T. E. Ryan*.

Dodge, J.  The verdict establishes simply that there is unpaid upon the conceded promissory notes of the defendant $2,040.68, and that the deceased, William Butler, in his lifetime, executed the paper quoted in the statement of facts. Upon these facts alone the plaintiff is entitled to a judgment, unless that paper, according to its terms, has annulled and

discharged defendant's liability. The contention of the appellant is against any such effect on the ground that the document is, according to its terms and the proof of its execution, only a will, and therefore is revoked by the subsequent will made in January, 1900.

Writings by which the owner's rights in his own property are affected or rights in or to such property are conferred on others fall into one or another of three broad classes: First, conveyances—those which evidence a presently completed and executed devolution of the property, or some right thereto; second, executory contracts—those which evidence a promise or agreement that some rights shall arise in another at some future time; and, third, those which merely declare a present will or intent as to a future disposition. Of these the second are valid only when supported by consideration, while the third are of no enforceable validity unless they are testamentary; that is, declaratory of a purpose as to disposition after the maker's death, and are completed by his death without formal legal declaration of change in such purpose. It is not always easy to assign a given document to either of these classes, for language is often an uncertain means of expressing mental processes. No form of words is conclusive. Documents may be and have been classed as contracts which contained no express word of promise or agreement, and others wherein such express words existed have nevertheless been classed as testamentary. Nevertheless, the presence or absence of such words is very significant—nay, probably controlling—unless something in the context or circumstances shows a mental attitude differing from the expressions used.

The paper relied on in this case of course presents nothing of the characteristics of the first class. It does not in the least suggest a present transfer or surrender of respondent's notes or the debt thereby evidenced. There can be no doubt that the person making it contemplated that such debt and such notes were to remain existent during his life. Neither

does the instrument contain any words of promise or agreement; nor, indeed, anything to indicate that any conception of contract between two parties was present in the mind of either the maker or the draftsman. To express such a conception, "I promise" or "I agree" are ordinarily used, and are words within the common vocabulary of the educated and uneducated, the lawyer and layman alike. On the contrary, the words "I certify," used in this paper, seem quite clearly to indicate absence of idea of dealing, one man with another, contractually, but instead a purpose to proclaim to whom it may concern that the declarant then had a certain intention, namely, that his son's notes should be void after his death. On the other hand, the writing upon its face presents all the elements of a testamentary instrument; one which declares the present will of the maker as to disposal of property after his death, without attempting to declare or create any rights therein prior to such event. Cassoday, Wills, §§ 9, 10, 376; Schouler, Wills, §§ 1, 273, 274; *Smith v. Holden,* 58 Kan. 535, 50 Pac. 447; *Conrad v. Douglas,* 59 Minn. 498, 61 N. W. 673; *Lautenshlager v. Lautenshlager,* 80 Mich. 285, 45 N. W. 147; *Stone v. Gerrish,* 1 Allen, 175; *Cover v. Stem,* 67 Md. 449, 10 Atl. 231; *Leaver v. Gauss,* 62 Iowa, 314, 17 N. W. 522; *Hinkle v. Landis,* 131 Pa. St. 573, 18 Atl. 941; *In re Will of Diez,* 50 N. Y. 88, 93.

For the reasons stated, we can reach no other conclusion than that the paper writing executed by William Butler upon its face was testamentary merely. If executed with the formalities required by our statutes it would have constituted a valid will, and if persisted in until completed by death would have canceled respondent's indebtedness. Inasmuch, however, as the intent so declared in October, 1898, did not persist, but was legally revoked by the will of January, 1900, disposing of all the testator's personal property (*Fisher's Will,* 4 Wis. 254; sec. 2290, Stats. 1898), its execution of itself constituted no defense to respondent's liability, estab-

lished by his promissory notes. Hence the verdict alone could support only a judgment in favor of the plaintiff.

But although that document, the execution of which is established, was merely testamentary and is revoked and therefore ineffectual as a ·will, still it does not exclude the possibility that, as is alleged in the answer, the parties in fact made a binding agreement, upon sufficient consideration, to the effect that the indebtedness evidenced by these notes should become canceled upon the death of their owner. The questions whether such agreement was or was not made, and whether the consideration claimed, namely, that the defendant should pay the interest during the life of his father, has been performed, were neither of them submitted to the jury. If there was evidence of such an agreement and performance of the defendant's promise, constituting its consideration, there must of course be a new trial. If there was no such evidence which, to any reasonable mind, could support a favorable conclusion, the appellant's motion for judgment upon the verdict should have been granted. We therefore proceed to examine the record to ascertain as to the existence of such evidence.

Respondent's case in this respect rests on the conversations when the writing of October 18, 1898, was signed, and on the testimony of statements made by the deceased that, while he held promissory notes from certain of his children, including *Andrew* [the defendant], he intended such notes to be void after his death, and had given the children writings declaring that intent. To one witness he said nothing about the interest during his life. To another he said: "I hold their notes, and I shall expect to have the interest as long as I live, but I shall not bother them for it." Upon suggestion of collection by personal representative after his death, he said: "If they have a writing to show that they shall never be bothered with it—I shall give whatever their share is here—won't it answer the same?" One of the witnesses to the writing quotes

the deceased: "He said before that what *Andrew* had got should be his, and all he wanted was his interest, and when he was gone it was *Andrew's.*" The narrative of the conversations at the time of signing the document, varying somewhat in details according to the statements of the different witnesses, is to the effect that, the two Russells and *Andrew* being at William Butler's house, the latter told *Andrew* he might go ahead and draw the writing, so the two Russells might witness it; said he wanted to make a paper to show *Andrew* would never have to pay the notes. They would be void after his death. All he wanted was *Andrew* should pay the interest. The principal should be his after death. He said: "If *Andrew* would pay his interest up to the time of the old gentleman's death, he might have those notes. He said they should be void. He wanted his interest as long as he lived. He gave *Andrew* to understand what the paper was going to be. He wanted the interest as long as he lived, and after that he could have the money." One witness testified: "Before my father signed the paper, *Andrew* took it and read it to father, and he said that was all right; that was the way he wanted it. Father told *Andrew* he wanted him to pay the interest on the notes as long as he lived, and after that the principal was to be his. *Andrew* said, 'All right, father,' he would." Thereupon *Andrew,* having written the paper now under consideration, wrote his father's name to it, and the latter affixed his mark, and the two Russells, at his request, witnessed it, and *Andrew,* when he went home, took it away with him. When this action was commenced and the original answer served, defendant admitted the alleged existence and amounts due on the notes, and made no allegation of any agreement for their cancellation; his defense being an alleged agreement at the time of their execution that the money should be an advancement merely. Later, by amendment, this paper of October 18, 1898, was pleaded as an agreement to cancel.

We have stated the substance of all the evidence bearing in any way upon the existence of a contract, without meaning to intimate that all of the conversations at the time of signing the paper writing would be admissible if the latter is to be treated as a written expression of William Butler's side of such contract. While there are some statements of this transaction which might, by remote possibility, be construed into the making of a promise that the indebtedness should become void on condition of a promise by *Andrew* that he would pay interest up to the time of his father's death, thereby impliedly agreeing to refrain from paying the principal before that time, which is the consideration insisted on by the respondent, we cannot persuade ourselves that the evidence reasonably warrants belief in such a view or purpose. There is no express declaration that *Andrew* might not pay up his principal if he chose, and from the whole transaction we think it entirely apparent that the contingency of his desiring to pay up was not considered by either as within the possibilities; merely the question whether the father would take any steps to compel such payment. Again, in view of the fact that the interest was only five per cent., and that in the year 1898 this was well toward the minimum rate of interest obtainable upon ordinary loans between individuals, it seems to us wholly unreasonable that either party should consider abstinence from payment a valuable consideration. The color of the transaction throughout, as resulting from the testimony of all three of the witnesses produced by the defendant, especially when supplemented by the form of the paper, which respondent himself drew, is consistent only with the idea that the father was declaring a purpose to give up something of that which belonged to him, and not that he was receiving or *Andrew* was promising anything to which the father was not already entitled; that the act of the father was not the purchase of an annuity for the anticipated brief period of his life, but was declaring a surrender outright, after

his death, of all the debt, except interest during that period, without consideration. Such being the facts, it is quite immaterial whether the father's words imported a promise or merely declaration of a purpose that the notes should become void after his death, for a promise of mere donation, without any consideration therefor, is no less ambulatory and revocable than a declared purpose or intent. It should, perhaps, be added that there is no evidence whatever that the defendant has in any wise changed his position or modified his conduct on the faith of either such promise or declaration. For these reasons we conclude that there was no credible evidence upon which the jury, as reasonable men, could have found the existence of a binding contract to cancel the notes sued on or the indebtedness evidenced thereby, and that no defense thereto has any support in the record. Hence the trial court should have ordered judgment for the plaintiff upon the facts established by the verdict. Motion therefor having been made, its denial was error, which can be fully corrected by directing the proper action.

The conclusion thus reached makes it unnecessary to consider various assignments of error in the admission and rejection of evidence, some of which were urgently pressed, and, if material to the result, would be worthy of consideration.

*By the Court.*—Judgment reversed, and cause remanded with directions to render judgment in favor of the plaintiff for the amount found due by the verdict.