McCOURT, Appellant, vs. PEPPARD and others, Respondents.

*October 26—December 12, 1905.*

*Promissory note: Contract or will? Consideration: Evidence.*

1. An aged woman, in feeble health and evidently preparing for death, gave to her daughter a promissory note, secured by mortgage, by the terms of which, for value received, she promised to pay to the daughter, five years after date, the sum of $500 with interest at five per cent. payable annually. The actual consideration was a promise by the daughter to "distribute," after the maker's death, $300 to the priest of a certain church for masses and $100 to a sister named, and to "keep" the rest herself. The parties had little business experience, the scrivener was not a lawyer, and the papers had been fully drawn and delivered before he knew their real purpose. He was instructed not to record the mortgage until directed so to do by the daughter, and she did not give such direction until the day of the mother's death. *Held,* that the transaction was testamentary in its character, and the note and mortgage could not be enforced as a contract.

2. A memorandum signed by the mother and delivered to the scrivener after the execution of the note and mortgage, showing the real consideration by recitals of what the daughter was to do,

even if, because not delivered to or signed by the daughter, it could not be considered a part of the transaction so as ·to be construed with the other papers, was nevertheless properly used by the scrivener to refresh his recollection, and his testimony in accord therewith, being undisputed, established the actual consideration for the note and mortgage.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

This is an action to foreclose a mortgage upon real estate in Manitowoc county for $500, but not seeking to enforce any personal liability. The land in question was the property of one Anne Peppard, who died September 14, 1898, at the age of about seventy-five years, leaving surviving her husband, the defendant *Thomas Peppard, Sr.,* and seven adult children; the plaintiff *Catherine Peppard* (now *McCourt*) being one of said children, and the remaining six being defendants in this action with their father. The mortgage was executed June 3, 1898, and was in the usual form, and by its terms secured payment of a note executed on the same day, in terms as follows:

"Taus, Wis., June 3d, 1898.

"For value received, five years after date, I promise to pay to the order of *Catherine Peppard* $500.00, with interest thereon from date, till paid, at five per cent.; interest payable annually. This note is secured by mortgage upon real estate, bearing even date herewith.

her<br>"ANNE X PEPPARD."<br>mark

Anne Peppard was not, at the time of the giving of the note, indebted to the plaintiff, nor did any consideration pass at that time from the plaintiff to her. The testimony of the justice of the peace who drew the papers and took the acknowledgment of the mortgage is the only evidence showing what took place at the time of the execution of the note and mortgage, and his evidence upon that subject is as follows:

"The old lady asked me to do some writing for her, and I sat down and we talked it over—what she wanted to have

written. She said she wanted to give a mortgage—draw up a mortgage, and I drew it as she wanted it, signed by witnesses, and I delivered the paper to Mrs. Peppard, the old lady, and she handed it to *Catherine*. *Catherine* held it a moment, then handed it back to me, saying: 'Mr. Zahorick, you keep that for a while, don't get it recorded until I tell you to.' I just simply took hold of the paper and made a few steps to a drawer, and just about that time I overheard a little conversation. It seems that Mrs. Peppard said to *Catherine:* 'You will do this, will you?' And she answered that she would, and that she could have me for a witness. And I went back and asked her what I was to witness. I said if I was to witness anything I would have to make a memorandum of it; wouldn't be apt to remember all those things. So I made this memorandum for myself to refresh my memory. I kept the mortgage there until I was instructed by Father Ryan to have it recorded; he saying that *Catherine* told him I should do so. He was on his way from Peppard's at that time, after seeing Mrs. Peppard. I think that *Catherine* was present during all the conversation that took place between her mother and me.

"*Q.* Then you knew nothing about the substance of what has gone into this Exhibit A, until after you had delivered the note and mortgage? You heard nothing about it? *A.* No, sir. Not a thing. Not until it was given me back by *Catherine* and put away.

"*Q.* You said if you want me to witness anything I shall have to write it down. What was next said by anybody? Who told you what to write down? *A.* Mrs. Peppard told me what she wanted done.

"*Q.* Tell us what she said in substance. You can't recall her language perhaps; but tell us what she said to you? *A.* She must have said same as I put it in that paper, that she had given her this mortgage for $500 to be distributed after death as follows: She told me in substance what I wrote down on that paper. *Catherine* was present at the time she stated that. I think she heard it. After I had prepared the paper for signature I read it aloud to Mrs. Peppard. I think *Catherine* was present. I think she was where she heard it or could hear it. I don't think she said anything about it."

The memorandum referred to by the witness in the foregoing testimony was introduced in evidence, and reads as follows:

"Taus, Wis., June 3rd, 1898.

"This is to certify that I, Anne Peppard, have this day given a mortgage to my daughter *Catherine Peppard,* for the sum of five hundred dollars ($500.00), to be distributed by her after my death as follows:

"$200.00 to the priest of St. Patrick's Church of Maple Grove for masses for myself.

"$100.00 to the same party for masses to be said for my daughters, Julia and Mary, and

"$100.00 to be given to my daughter Aggie, and the balance she is to keep for herself.

her<br>"ANNE X PEPPARD."<br>mark

The day upon which the mortgage was recorded was the 14th day of September, 1898, being the day of the mortgagor's death. The memorandum aforesaid was kept by the justice of the peace in his own hands, and produced by him upon the trial. This action was commenced after the note, by its terms, became due, and the defense was that there was no consideration for the note, and that the whole transaction was testamentary in character and not contractual. The court found that the transaction was contractual, and that the note and mortgage were valid so far as the $100 to be retained by the plaintiff and the $100 to be paid to Aggie were concerned, but void as to those parts providing for the payment of sums to the priest for the saying of masses. Upon these findings judgment of foreclosure was rendered, and the plaintiff appeals from that part of the judgment refusing judgment for the full amount of the note.

For the appellant there was a brief by *Burke & Craite,* and oral argument by *Isaac Craite.*

For the respondents the cause was submitted on the brief of *Kittell & Burke* and *Nash & Nash.*

WINSLOW, J.   The pivotal question in this case is whether the transaction of June 3, 1898, was contractual or testamentary in its character.   If it was contractual—that is, if there was a promise on the part of *Catherine* to expend certain sums for certain definite purposes after her mother's death, and in consideration thereof a promise by the intestate to repay to her the sums so expended, the performance of which latter promise was secured by the mortgage in question—no reason is perceived why the contract should not be enforced.   There is no element of trust in the legal sense in such a transaction. It is a pure contract.   If, on the other hand, the transaction was testamentary—that is, if the written documents, viewed in the light of the attending circumstances, must be construed not as a present contract, but as a direction that *Catherine* should receive $500 out of her mother's estate after her death and expend the money so received for the purposes named— then the papers cannot be enforced as a contract, but must operate as a will if they operate at all.   *Templeton v. Butler,* 117 Wis. 455, 94 N. W. 306.

The question is by no means easy of solution.   It is true that the note and mortgage are in the usual form, and upon their face are unambiguous and purely contractual in their nature.   The note recites a present consideration, and were it not for evidence *aliunde* there would be no doubt that we are dealing with a simple contract to pay money, secured by a collateral mortgage.   But the recitation of consideration is always open to explanation or contradiction, and the evidence properly introduced here on that subject shows without dispute that there was no present or past consideration for the intestate's promise; but, if there was any consideration, it was a promise to do something in the future.   It may be very duobtful whether the paper signed by the intestate after the execution of the note and mortgage, reciting what *Catherine* was to do, can be considered as forming a part of the transaction so that it can be construed with the other papers.   It was

never delivered to *Catherine* and was not signed by her, and seems to have been designed only for the purpose of aiding the memory of the officer in case a question should arise after Mrs. Peppard's death as to what *Catherine* had promised to do; but we do not regard this question as important. In any event it might be properly used by the officer as a memorandum to refresh his recollection as to the consideration. It was so used, and, the officer's testimony being in accord with the memorandum and entirely undisputed, the facts stated in the memorandum showing the actual consideration are fully established, and must be considered in judging of the nature of the transaction.

The mortgage is, of course, but an accessory of the note. It conveyed no title to the land, nor did it create a lien thereon unless the note was in fact a contract creating an indebtedness. So it is necessary, primarily, to consider the legal effect of the note. In view of the undisputed testimony as to the consideration, the note may be read as though the actual consideration were inserted in words. So reading it, we find a promise by the maker to pay the plaintiff or order, five years after date, $500, with annual interest at five per cent., in consideration of the promise by the plaintiff to "distribute," after the maker's death, $300 to the priest of a certain church for masses, $100 to a sister named, and "keep" the balance herself. Was this a present contract, a promise in consideration of a promise, or was it a direction that after the maker's death $500 be paid to the plaintiff upon her agreement to apply the sum to certain uses? This is to be determined, not necessarily from the language nor from the belief or understanding of the parties as to the legal effect of the paper, although all these should be considered, but the circumstances surrounding the parties at the time of its execution are also to be taken into consideration, and from all the facts the court will determine whether the instrument was intended to have a *post mortem* effect only, and hence is testamentary. 1 Underhill, Wills,

§ 37. This principle does not affect the well-understood principle that, if a deed of land in the usual form be delivered with intent to pass the title, the title will pass, notwithstanding the fact that the grantor may have believed that it was revocable at pleasure. *Rogers v. Rogers,* 53 Wis. 36, 10 N. W. 2.

In the present case there are considerations entitled to weight on each side of this question. Upon the contract side there is the fact that the form of the paper is purely contractual and drawn in terms apt and fitting for a present contract; that it is a definite promise to pay a certain sum of money at a fixed time in the future, with no mention of the contingency of death; and that the sum bears interest, to be paid annually. These facts are certainly inconsistent with the idea that the instrument was intended to have a *post mortem* effect only. But, upon the other side, it is pointed out that while the effect of these considerations would be strong if the paper had been drawn by an experienced lawyer or executed by a person of experience in the transaction of business, they lose much of their force when it is considered that the persons immediately concerned evidently had little business experience and that the scrivener was not a lawyer, and that the papers had been fully drawn and delivered before he had knowledge of their real purpose.

Passing from these merely negative considerations, a number of facts are relied upon as persuasively showing that the paper was intended for testamentary purposes only. The maker was a person at least seventy-two, and perhaps seventy-seven, years of age. She had been in feeble health for years, was evidently contemplating and preparing for death, and could not reasonably expect to survive the term of the note. The payments to be made by *Catherine* were all to be made *after* the maker's death. These payments were all in the nature of direct bequests or bequests in trust, whether valid or invalid. The word used by the donor in dictating the memo-

randum with reference to the payments to be made to third persons was the word "distribute," and the word used with reference to the plaintiff's own share was the word "keep," both of which words are inconsistent with the idea that the plaintiff was to make payments out of her own funds and reimburse herself by enforcing the note and mortgage, but entirely consistent with the idea that she was first to obtain the money from the donor's estate. Funds which had not been previously obtained could not be "distributed" or "kept." The only promise apparently made by the plaintiff was that she would "do this;" i. e. that she would make this distribution, not that she would make the payments and rely on the note and mortgage for reimbursement. The mortgage was not to be recorded until the plaintiff gave direction, and she did not give that direction until the day of her mother's death.

We have endeavored to give to all the material facts bearing on the question that careful consideration and weight to which they are entitled, and we are convinced that they point clearly to the conclusion that the intention of both parties was that the note was to have a *post mortem* effect only, notwithstanding its terms. The whole transaction was simply an arrangement by which it was expected that $500 was secured to be paid to the plaintiff out of the donor's estate after her death for distribution.

These conclusions render unnecessary the discussion of any other questions raised, and demonstrate that there was no error committed of which the plaintiff can complain.

*By the Court.*—That part of the judgment appealed from is affirmed.