Estate of Johnson: Krueger, Claimant, Respondent, vs. Johnson, Executrix, Appellant.

*October 9—November 7, 1939.*

For the appellant there was a brief by *McCaul & McCaul* of Tomah, attorneys, and *Higbee & Higbee* of La Crosse of counsel, and oral argument by *Jesse E. Higbee* and *William R. McCaul.*

For the respondent there was a brief by *F. E. Withrow* and *Hale & Skemp,* all of La Crosse, and oral argument by *Quincy H. Hale.*

NELSON, J. It is not disputed that on August 18, 1923, William C. Johnson, the deceased, who at that time had retired from the general store business, went to the farm occupied by the claimant and her husband and then and there, in their presence, delivered to the claimant the instrument mentioned in the preliminary statement of facts; that that instrument was in his handwriting, was signed by him, and was witnessed by Louis Young, one of his close friends.

The claimant testified that on many occasions during the years prior to January, 1922, when the deceased sold his store, she had performed services as a clerk in his store, at his special instance and request; that for such services she had been paid only very small sums, aggregating not more than $5; that the deceased, in his lifetime, and also his wife, the present executrix, had repeatedly promised her that some day she would be paid for her services; that on August 18th, when the deceased delivered the instrument to her, he told her that he had promised to settle with her and wanted to know if the instrument was satisfactory to her; that he handed the paper to her and said:

"Will you be willing to wait till I am gone?"

That he said:

"$2,000 and $200 more if you have any trouble collecting it. Press your claim. Don't tell Lizzie [his wife], but keep it to yourself. You have it coming and I want you to have it, and when I am gone, press your claim;"

that he wanted to know if it was satisfactory to her and she said that if it was satisfactory to him it was to her. Claim-

ant's husband, Rudolph Krueger, testified that the deceased came out to the farm and said:

"Blanche, I sold my store, and I want to make a settlement. I always promised to pay you."

He handed her the paper and said: "Read it over;" that he and claimant read it over and then the deceased said:

"Well, is that satisfactory?"

Claimant said:

"If it is satisfactory to you, it is to me."

The deceased said:

"You will have to wait until after my death."

The claimant then said:

"All right, but I would rather tell Lizzie."

And the deceased said:

"No, I don't want to tell her. Just press your claim when I am gone. You got it coming, it belongs to you."

The deceased and his wife had no children. Both of them had made much of the claimant during her childhood and up until 1925, when a break in the friendly relations between Mrs. Johnson and the claimant occurred. At that time the claimant and her husband were tenants upon one of the farms of the deceased which concededly both the deceased and his wife considered would belong to her after his death. There is an abundance of testimony tending to show that the claimant worked at the store of the deceased on many days, even after she was married and while she was residing on farms in that locality.

The executrix assigns as error the finding of the court that services rendered to the deceased between the years 1905 and 1923, had been paid for only in part, and that the instrument was received by claimant in payment and satisfaction of claims which she then had for work and services, and also

in concluding that the estate was indebted to the claimant in the sum of $2,200. The executrix also assigns as error the refusal of the court to find, as requested by her, that on August 18, 1923, the deceased was in no wise indebted or under obligation to the claimant; that claimant had been fully compensated for any services rendered the deceased; that the instrument was not delivered in pursuance of either a moral or legal obligation, but was prompted by motives of affection and with the intent to permit the claimant to share in his estate; that said instrument was testamentary in character and invalid as a will; and that the instrument was intended merely to effectuate a gift, which was effectively revoked before his death.

Much of the brief of the executrix consists of arguments which might properly have been, and no doubt were, made to the trial court. In considering findings of fact our principal concern is to determine whether such findings are against the great weight and clear preponderance of the evidence.

The principal contentions of the executrix, other than those which assail other findings of fact or refusal to find, are: (1) That if the instrument was contractual, it was not supported by any consideration; (2) that if the instrument was testamentary in character, it is invalid because not properly executed as a will; and (3) that the deceased only intended by the instrument delivered to the claimant to make a gift to her, payable upon his death, which was thereafter revoked.

(1) As before intimated, we think there was ample testimony to support the finding of the trial court that prior to 1923 claimant rendered services to the deceased which had been paid for only in part, and that such instrument was delivered to her by the deceased in payment of and in satisfaction of any and all claims that he considered that she had against him. There is abundant testimony tending to show

that she performed services for the deceased during many years; that she did not intend such services to be gratuitous; that the deceased repeatedly promised to pay her for such services some time, and that the instrument delivered to her was in payment of those services.

Whether the instrument is a nonnegotiable note or only an acknowledgment of indebtedness may not be clear. Whether it is one or the other, in our opinion, is of no importance. When the surrounding circumstances are considered, it is clear that the trial court was justified in concluding that it was contractual in character. *Sheldon v. Blackman,* 188 Wis. 4, 205 N. W. 486; *Estate of Sense,* 206 Wis. 89, 238 N. W. 811; *Estate of Fuhrmann,* 209 Wis. 218, 244 N. W. 628. It will be remembered that the instrument was in the handwriting of the deceased. It was signed by him and witnessed by one of his close friends prior to its delivery to the claimant. His declarations at the time of its delivery clearly support the conclusion that the deceased intended it to be accepted by the claimant as a satisfaction of all her claims for services which had been rendered to him, practically without pay, during the course of many years, and that the claimant so accepted it.

What consideration is necessary to support a promissory note or an executory contract was considered at length in *Estate of Hatten,* 233 Wis. 199, 288 N. W. 278. No useful purpose would be served by repeating what was said there. In our opinion, the instrument cannot be assailed on the ground that no consideration was shown.

(2) Nothing need be said respecting the contention that if the instrument was testamentary in character, or intended as a will, it was not properly executed.

(3) As to the contention that the instrument was intended as a gift to take effect after the death of the deceased, and that the gift thereafter was revoked, we are of the view that at the time the instrument was delivered it was not intended

as a gift to take effect after death. The argument that it was intended as a gift to take effect after death is based upon the fact that after the death of the deceased there was found in his safe two instruments. One of these instruments was contained in an envelope upon which the deceased had written:

"Not to be opened untill I am dead. My last will. W. C. Johnson."

The document inclosed in the envelope was all written in the handwriting of the deceased, was signed and sealed by him, and was dated the "Fifteenth day of Feb. 1924." Following the signature there was a full and complete attestation clause but with no attesting witnesses. The instrument, which obviously was intended as a will, began:

"In the name of God, Amen. I, William C. Johnson, Jr., of the town of Oakdale, county of Monroe and state of Wisconsin, being of sound mind and memory and mindful of the uncertainties of human life, do make, publish and declare this my last will and testament in manner and form following."

The instrument, after providing for the payment of his just debts and funeral expenses, gave, devised, and bequeathed his estate to his beloved wife, Elizabeth Grover Johnson, except certain bequests to his four sisters, and then continued:

"And to Blanch Butterfield Krueger one thousand dollars providing she outlives me. If she dies befor I do then this part of this will becomes nul & void. This also cancels one certain paper I made and delivered to Blanch Butterfield Krueger in the month of Aug. 1923, as to what part of my estate I wanted her to inherate."

The instrument then appointed his wife "executor," and authorized her to "compound, compromise and settle any claims or demands which may be against or in my favor of

my said estate, hereby revoking all former wills & contracts by me at any time made."

The other instrument was contained in an envelope upon which was indorsed the following:

"For Elizabeth Johnson But not to be opened untill my death. My Last Request. W. C. Johnson."

This also was in the handwriting of the deceased and was signed by him on Nov. 11, 1925. That instrument was addressed:

"To whom it may concern."

It commenced:

"This instrument made this 11th day of Nov. 1925 is to certify this is the *last* disposition I make of my property. All of my property both real estate and personal I leave to my Wife Elizabeth R. Johnson excepting two hundred dollars to each of my 4 sisters." (Naming them.)

That instrument contained this clause:

"This is also to certify that an instrument I made in 1923 and reading as following:

"Two months after my death my estate is to pay Blanch Butterfield Krueger two thousand dollars is nul and void. My reason for doing this is that Blanche was at fault in them leaving my farm after I told her that the farm was to be hers at my death. And I do not feel under any obligations to her now even as a friend. I had promised her mother to look after her, but when she used me in the way she has I cancel all."

The will that was admitted to probate was drawn by an attorney and was dated October 24, 1933. The third paragraph thereof is as follows:

"It is my will, and I hereby cancel and revoke any legal effect that may have arisen on account of a note of two thousand dollars ($2,000) given to Blanche Butterfield Krueger at a time when my finances were in a much better state than they now are, and which was intended as a testa-

mentary disposition of the sum of two thousand dollars ($2,000) at that time. No provision whatever is made for the payment of any sum to the said Blanche Butterfield Krueger as said note had no value or consideration when given."

The executrix argues that it clearly appears from these instruments what the deceased intended by the instrument delivered to the claimant. We think the argument not convincing. It is perfectly clear that the deceased knew what language to employ in making a will, and that when he drafted the instrument which he delivered to the claimant, he employed no language which indicated that it was intended by him to be a will. In the instrument dated February 15, 1924, he referred to the instrument delivered to the claimant as "one certain paper I made and delivered to Blanch Butterfield Krueger." In the second instrument mentioned he described the document delivered to the claimant as "an instrument I made in 1923." In the will admitted to probate he refers to the instrument delivered as "a note of two thousand dollars," and also says "said note had no value or consideration when given."

All the self-serving declarations found in the two instruments and in his will were not conclusive and did not prevent the trial court from concluding from all the evidence that the instrument delivered to the claimant was contractual in character. Obviously, what he did, after delivering the instrument in satisfaction of his indebtedness to the claimant, could not vary or cancel that instrument. The fact that he never delivered any other instrument to the claimant, or even asked her for the return of that instrument, militates against the contention that he intended it to be of a testamentary character.

A number of other contentions are made by the executrix which, in our view, are principally directed to the credibility of the claimant and her husband and the weight to be given

to their testimony. We think such contentions need not be specifically treated.

The executrix further contends that much of the testimony given by the claimant was incompetent in that it concerned transactions with a deceased person. There would be merit in this contention if objection had been made to her testimony now claimed to be incompetent. It is quite apparent that the executrix considered that a full and complete examination of the claimant with respect to her transactions with the deceased would prove to her advantage rather than to that of the claimant. In view of the fact that no objection was made to the testimony, we think error may not be assigned on that ground.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I dissent herein for the reason given in my dissenting opinion in the case of *Estate of Hatten,* 233 Wis. 199, 288 N. W. 278. The value of the services rendered by claimant bears no reasonable relation to the amount of the note in suit, which is held valid by the court on the theory that the amount of the note was agreed on between the parties as compensation for services rendered for which the deceased was legally bound to pay, as distinguished from an attempt by delivering a promissory note to make a gift or a testamentary disposition.