ESTATE OF SCHAEFER: FISHER, Administrator, Appellant, vs. SCHAFER and another, Respondents. [Two cases.]

*April 7—May 6, 1952.*

432

434

For the appellant there were briefs by *Lueck, Skupniewitz & Lueck* of Beaver Dam, and oral argument by *A. W. Lueck*. *Leo C. Hartman* of Juneau, ·for the respondents.

BROWN, J. Claimants submit that this court has no jurisdiction over the subject matter of the appeals because the administrator did not serve notice of the appeals until more than sixty days had passed since the entry of the judgments and he never did obtain, upon petition and notice to the adverse party, an order extending the time to appeal. They acknowledge that they have participated in the appeals by the receipt of briefs and by serving briefs of their own and engaging generally in proceedings in the appellate court not only before moving to dismiss the appeals but without making such motions. Their contention is that if there was no jurisdiction of the appeal by reason of the administrator's procedural failures below, jurisdiction cannot be created by the acts, stipulations, or consent of the parties.

We find no jurisdictional defect in the appeals. Within a year after the date of judgments, which were entered February 2, 1951, the administrator had a right, upon petition and notice to the adverse parties, by virtue of sec. 324.05, Stats., within the trial court's discretion, to procure an extension of the time within which the appeals might be taken. Surely, an adverse party may waive the petition and notice and give his consent to the entry of the order of extension at any time during the period when the trial court is

empowered to act after notice duly given, and the order entered upon such waiver and consent within such time will have all the validity of one entered after notice without the consent of the opponent. By stipulation dated July 24, 1951, the claimants consented to an extension of the time for appeals and approved the orders of the trial court entered the same day granting extensions to October 1, 1951. The appeals were taken and notice thereof served upon claimants' counsel August 3, 1951. Furthermore, while we do not think that there was any jurisdictional defect in procuring the extension orders, if the method of procuring them was irregular, not being upon notice but only by stipulation, such irregularity was clearly waived by the respondents' conceded participation in the appeals without first moving that they be dismissed, under the provisions of sec. 269.51 (1) which reads:

*"Irregularities and lack of jurisdiction waived on appeal; jurisdiction exercised; transfer to proper court.* (1) When an appeal from any court, tribunal, officer, or board is attempted to any court and return is duly made to such court, the respondent shall be deemed to have waived all objections to the regularity or sufficiency of the appeal or to the jurisdiction of the appellate court, unless he shall move to dismiss such appeal before taking or participating in any other proceedings in said appellate court. If it shall appear upon the hearing of such motion that such appeal was attempted in good faith the court may allow any defect or omission in the appeal papers to be supplied, either with or without terms, and with the same effect as if the appeal had been originally properly taken."

We conclude that we have jurisdiction of the appeals.

Passing to the merits of the appeals, which can be treated together without any resulting prejudice, it appears that Fred Schaefer was an invalid and was very nearly helpless. He lived on his own farm with his son, Dewey. They "batched it" but when, in 1938, Fred Schaefer had a paralytic

stroke, a practical nurse, Edna Jackman, was employed full time at $20 per week. In 1940 she and Dewey were married. They both attended the invalid until 1948 when Edna divorced Dewey and left the place. Dewey continued to care for his father until the latter's death August 21, 1949, at the age of eighty-six. Edna received no pay after she married Dewey and Dewey never received any. Dewey made claim against the estate for board, lodging, and nursing services from August 22, 1943, to August 22, 1949, three hundred twelve weeks at $20 per week, or $6,240. Edna's claim was for her services from March 10, 1943, to September 13, 1948, less ten days, at $30 per week, or $8,295. Three children, in addition to Dewey, survived Fred Schaefer.

The court found that Dewey and his father had an agreement that Dewey should be paid, after his father's death, the reasonable value of board, lodging, and nursing services which he furnished to his father, and that he did in fact furnish them for the time stated in his claim and that their reasonable value was as stated. A similar finding was made in respect to Edna's claim for her services which consisted of care, attention, nursing, laundry, and mending. Judgments were entered allowing the two claims.

Findings of fact by the trial court will not be reversed unless contrary to the great weight and clear preponderance of the evidence. *Swazee v. Lee* (1951), 259 Wis. 136, 47 N. W. (2d) 733, *Donner v. Genz* (1906), 129 Wis. 245, 107 N. W. 1039, 109 N. W. 71.

The testimony that Fred Schaefer promised Dewey and Edna Schafer that they would be paid for their services after his death if they would keep him and care for him and not let him be taken to a hospital was clear and direct and, if believed, it sustains the finding that the agreement was made and performed. The court was the judge of its credibility. The finding that the amounts of $20 and $30 per week, respectively, were reasonable also has evidence in its support,

and can certainly not be deemed excessive considering the testimony concerning the helpless condition of Fred Schaefer. Indeed, the appellant does not seriously contend that the findings are not supported by the evidence. His objections, rather, are to the credibility and competency of such evidence and are those which he advances regarding his right to a new trial.

It appears that counsel for the administrator was Verne Knoll, an attorney who was in financial difficulties and who later surrendered his license to practice law for reasons connected with his use of other people's money and not for lack of competence as a lawyer. Mr. Knoll cross-examined both claimants and, it is asserted, his own questions and his failure to object to their testimony concerning their transactions with the deceased Mr. Schaefer assisted materially in establishing their claims. It is settled that the protection of sec. 325.16, Stats., against the testimony of a claimant concerning his transactions with the deceased is waived by the failure of deceased's representative to make timely objection, *Estate of Johnson* (1939), 232 Wis. 556, 566, 288 N. W. 290, and also by cross-examination of the otherwise incompetent witness regarding the transaction. 3 Jones, Evidence, Civil Cases, p. 1433, sec. 784; 58 Am. Jur., Witnesses, p. 212, sec. 359. We do not understand that the administrator disputes the rule. Once the competency of the witness is established by the waiver, the weight to be given his testimony is a matter for the trial court. Moreover, the former spouses testified each for the other to their own conversations with Fred Schaefer regarding his agreement to compensate that other, and a witness, Leona Halfman, sister of Mrs. Schafer, testified to the same effect. Quite aside from waiver, there were thus two competent witnesses, unaffected by sec. 325.16, to each agreement or claim. The administrator submits that under the peculiar circumstances the evidence should not be held sufficient to establish the

claims. We cannot say that the trial judge abused his discretion in believing it and, if believed, it is ample support for the finding and the judgment.

In support of his motion for a new trial the administrator presented his own affidavit which recited neglect of his attorney in preparation for trial, the unwillingness of the attorney to discuss the cases with him or to heed the administrator's suggestions concerning available witnesses and which repeated the complaints concerning the attorney's conduct in the trials themselves, particularly his waiver of the benefit of sec. 325.16, Stats. The administrator produced affidavits of various other persons, to wit: Dolores Sabatke, deceased's daughter, who was a witness at the trials and who says that Mr. Knoll prepared and presented the estate's cases poorly; Elmer Sabatke, who repeats the charges of his wife, Dolores; Charlotte Sabatke, nineteen-year-old granddaughter of the deceased, who heard claimant Edna say—"When we got married grandpa gave us everything we made on the place for taking care of him, and we have to pay the taxes and insurance;" Dolores Pahl, another granddaughter, who said that, when Edna was leaving at the time of the divorce and demanded payment for Fred's care, she heard Dewey tell Edna that she had nothing coming; Sheldon Schafer, grandson of the deceased, who said that Dewey Schafer had told him that the compensation was to be everything that they made on the farm, they to pay taxes and insurance, and that when Edna left and asked for pay Dewey told her that she had nothing coming; Ervin Schafer, son of the deceased, who says that Dewey told him "Pa doesn't owe Edna nothing;" Jacob Ollinger, a thresher, who said Dewey told him that the agreement was that Dewey and Edna were to have everything they made on the farm but were to pay taxes and insurance and after Fred's death the property was to be divided equally among Fred's four children; Lester Schafer, son of the deceased, who says Dewey told him that he and

Edna were to have everything they made on the farm, were to pay the insurance and taxes, and that Edna had nothing coming from Fred. There were opposing affidavits from Edna and Dewey pointing out that the affiants Elmer and Dolores Sabatke and Ervin Schafer were in court at the trials, and an affidavit by Verne Knoll that he had prepared and tried the estate's cases vigorously and such evidence as he did not present was withheld because he believed it would not be helpful.

On the basis of the affidavits and on the attorney's conduct of the trials themselves the administrator submits that he is entitled to new ones because the judgments were the result of mistake, inadvertence, surprise, or excusable neglect, and he alleges that he has good defenses to the claims. It must be remembered that these are not cases of default judgments which are opened to permit the defendants to present their defenses. The issues here were tried. The administrator is really complaining that his attorney should have done better. Perhaps he should but it does not follow that the administrator for whom he was acting must be relieved of the effect of his attorney's lack of skill or diligence. Whether or not the administrator knew, before trial, of the evidence contained in the affidavits, it existed and was obtainable then as well as it was afterwards. The administrator had his day in court; some of the affiants attended the trials, one, Mrs. Sabatke, even testified to her version of the agreements for compensation, reiterated in her affidavit. If all the evidence now deemed material was not presented although a most ordinary preparation of the case would have disclosed its existence, we consider that the learned trial court did not abuse its discretion in refusing to order a new trial to enable the administrator to offer what was reasonably available when the issues were first tried, and to subject the claimants to a second prosecution of their claims, no fraud or bad faith being charged against them or the attorney for

the administrator. Parties are not to feed out their evidence piecemeal in successive trials.

When we consider Attorney Knoll's tactics of inquiring into the merits of respondents' claims instead of objecting to the competency of the claimants to testify regarding the agreements we find no abuse of discretion in the refusal to grant new trials for that reason. Dewey could not testify over objection in respect to his own claim but his ex-wife and Mrs. Halfman would still have been competent witnesses in respect thereto, as he and Mrs. Halfman were in respect to the agreement between Fred Schaefer and Edna. A judgment is not to be reversed because on second thought it appears that counsel did not try the case perfectly. It will require a very clear showing of resulting injustice to move this court to exercise its discretionary powers of reversal and permit the client to try again with the same or other counsel. Certainly no case is made here to require that the administrator now be given an opportunity to try the alternative which his counsel rejected.

The trial court was also of the opinion that the proof offered in the affidavits would probably not produce a different result in a new trial. All but one of the affiants had a family interest, if not a direct personal one, in the result and only Jacob Ollinger added anything material to the evidence which was already before the court in the testimony of Dolores Sabatke. It lay within the court's discretion to determine the probable effect of the additional proof. We cannot say the discretion was abused and, as we have already indicated, the failure to produce the proof at the trial has not been excused.

We conclude that the learned trial court acted within its discretion in denying the motions for new trials.

Finally the administrator submits that compensation for more than two years of personal service is barred by sec. 330.21 (5), Stats. Secs. 330.14 and 330.21 must be

read together to be intelligible. So read (material parts only), they provide:

"330.14 *Actions, time for commencing.* The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued."

"330.21 *Within two years.* Within two years: . . .

"(5) Any action to recover unpaid salary, wages, or other compensation for personal services, except fees for professional services; . . ."

The trial court found the agreements to be that after Fred Schaefer's death claimants should be paid for their services. Their causes of action did not accrue until the death and their claims were filed with the county court within two years thereafter. The statute referred to does not reduce the period for which compensation is allowable to these claimants.

*By the Court.*—Judgments affirmed.