IN RE ESTATE OF TULLEY, Deceased: WAUKESHA STATE BANK, Personal Representative, Respondent, v. MOORE, Appellant.

Supreme Court

*No. 76–373. Submitted on briefs November 29, 1978.—
Decided January 9, 1979.*
(Also reported in 237 N.W.2d 329.)

For the appellant the cause was submitted on the brief of *Homer J. Williams*, attorney, and *James R. Sommers* and *Hunter, Tikalsky & Steimel*, of counsel, all of Waukesha.

For the respondent the cause was submitted on the brief of *John C. Curran* and *Cramer, Multhauf & Curran* of Waukesha.

WILLIAM G. CALLOW, J. Jean Moore's claim against the estate of Theresa Tulley was based in part on a $5,000 check delivered along with two explanatory notes from the decedent to the claimant before the decedent's death. On this appeal we affirm the trial court's conclusion that the check constituted an invalid testamentary transfer because it failed to comply with the formalities of execution prescribed by the Statute of Wills, sec. 853.03, Stats.[1]

---

[1] "853.03 **Execution of wills.** Every will in order to be validly executed must be in writing and executed with the following formalities:

"(1) It must be signed (a) by the testator, or (b) in the testator's name by one of the witnesses or some other person at the testator's express direction and in his presence, such a proxy

The claimant lived next door to the decedent and her husband in Waukesha for a decade. They became good friends and continued to see each other even after the claimant moved in 1970. In January, 1972, the decedent and her husband moved to France, to live with their daughter in Marseilles. The decedent's husband died shortly after they arrived in France.

The decedent remained in France, except for a visit to Waukesha in the summer of 1973, for the next two years. She moved back to Waukesha in June, 1974, and shared a friend's apartment. She was in ill-health and had to walk with canes because of a broken hip. From July to late September, 1974, the claimant, using her own car, drove the decedent around daily to search for an apartment. After they found one, the claimant took the decedent shopping for furnishings. She helped the decedent clean the new apartment. She visited her daily, took her shopping, and did her laundry regularly. She brought food to the decedent when she was ill. Just one month after the decedent was in her new apartment, she moved to the apartment downstairs. The claimant helped her clean the premises and paint the bedroom. The claimant would call the decedent each morning and visit her later in the day. She continued to look after her until her death. The decedent told her landlord more than once that she did not know that she would do without the claimant's help.

On September 11, 1975, the decedent gave the claimant a check dated that day for $5,000 and a handwritten note which said:

"Jean[,] I am leaving a check for you rather than putting you in the will. This way you won't have to pay tax on it. I only hope there is enough left to cover it by the time I die."

signing either to take place or to be acknowledged by the testator in the presence of the witnesses; and

"(2) It must be signed by 2 or more witnesses in the presence of the testator and in the presence of each other."

The claimant testified that "a couple weeks later" the decedent gave her this note:

"If you're asked by some chance how come I gave you a 5,000 ck, just say I've owed it for a long time. There should be no questions asked."

The decedent was hospitalized on October 17, 1975. A few days later she gave the claimant a check for $500.

The decedent died on Saturday, November 1, 1975, leaving an estate valued at about $40,000. The same day the claimant attempted to cash the checks at the decedent's bank, Waukesha State Bank. She was told that there were insufficient funds in the account to cover the checks. At no time after August 1, 1975, was there always enough to cover the $500 check.

On Monday, November 3, the claimant took the checks to the lawyer who drafted the decedent's will. They met with a Waukesha State Bank officer. The bank was to become the estate's personal representative. The claimant's checks were intermingled with other checks and documents the lawyer had brought to the bank. The officer, assuming the checks were never delivered to the claimant by the decedent, told her that they would not be paid because they had not been delivered. He advised her to file a claim against the estate for the amount of the checks.

She filed a claim against the estate for $5,500. The bank, as personal representative, objected to the claim. After an evidentiary hearing, the probate court on July 8, 1976, issued a memorandum decision determining that the $5,000 check was an invalid testamentary disposition because it failed to comply with sec. 853.03, Stats., prescribing certain requirements for execution of a will. The court allowed the $500 claim as founded on a valid inter vivos transfer. The claimant moved the court for reconsideration of its decision. While the motion was pending, findings of fact, conclusions of law, and a judgment were entered in accordance with the memorandum

decision. The court granted the motion for reconsideration and issued a short memorandum decision on October 29, 1976, confirming its findings, conclusions, and judgment.

From that part of the resulting order affirming the judgment which denied the claim founded on the $5,000 check, the claimant appeals. The question on appeal is whether the $5,000 check constitutes a testamentary disposition which is invalid for failure to comply with the formalities of execution prescribed by the Statute of Wills, sec. 853.03, Stats.

The evidentiary facts are undisputed. The resolution of this case calls for the application of settled legal principles to these facts.

A testamentary disposition is one "to take effect upon the death of a person making the disposition, and as to which he has substantially entire control until his death." *Koppelkam v. First Wisconsin Trust Co.,* 240 Wis. 254, 256–57, 3 N.W.2d 350 (1942) ; *Templeton v. Butler,* 117 Wis. 455, 458, 94 N.W. 306 (1903) ; Restatement (Second) of *Trusts,* sec. 53, Comment a (1959). Generally, testamentary dispositions must satisfy the requirements for execution of wills prescribed by the Statute of Wills, sec. 853.03, Stats. *But see, e.g., Estate of Michaels,* 26 Wis.2d 382, 132 N.W.2d 557 (1965) (involving sec. 221.-45, Stats., relating to joint bank accounts). An otherwise valid agreement to pay money for services is not rendered invalid because payment is postponed until after death. *Estate of Fuhrmann,* 209 Wis. 218, 223, 244 N.W. 628 (1932) ; *Sheldon v. Blackman,* 188 Wis. 4, 15, 205 N.W. 486 (1925).

Whether an instrument is valid as a contract with payment delayed until the payor's death or invalid as a testamentary transfer depends chiefly on the maker's purpose, to be gleaned from an examination of the instru-

ment and the circumstances surrounding the transfer. *Estate of Beyschlag,* 201 Wis. 613, 616, 231 N.W. 165 (1930). The trial judge properly noted there was no proof that the claimant, prior to the decedent's delivery to her of the $5,000 check, expected any compensation from the decedent for any services. There is no proof that claimant ever demanded anything from decedent in return for her services or that any agreement for compensation for services was ever contemplated by the parties.

In *McCourt v. Peppard,* 126 Wis. 326, 105 N.W. 809 (1905), the court examined the context and nature of the transaction to affirm the trial court's judgment holding partly invalid a five-year note and mortgage given by a mother to her daughter in exchange for the daughter's promise to distribute part of the money after the mother's death among designated persons and to keep the balance. The court found significant the maker's old age and ill-health, inferring that she was evidently preparing for death and could not reasonably have expected to survive the term of the note. The specified payments, in the nature of bequests, were to occur after the mother's death, to be "distributed" or "kept" by the daughter. The court thus concluded that the instrument was an ineffective attempt to make a testamentary disposition.

In *Sheldon v. Blackman, supra,* the court affirmed the trial court's judgment holding valid a note given by the decedent to the claimant, payable on the decedent's death. The note was an unconditional promise to pay the claimant $30,000 on the maker's death in consideration of the claimant's having rendered household services for the preceding thirty years. The note also provided for payment to the claimant from the maker's estate for the value of future services. The court held that the note was a valid contractual obligation. It found significant the unconditional nature of the obligation. The court suggested that if the maker had reserved the right to

change or control the amount payable to the claimant, the result might have been different. *Sheldon, supra* at 14.

In *Estate of Beyschlag, supra,* the instrument at issue was a power of attorney which appointed Sjolander as the decedent's agent to collect various rental and dividend income. Out of this Sjolander was to support the decedent; on the decedent's death any remaining funds were to " 'become the sole and absolute property of . . . (Sjolander) as and for compensation for services *heretofore* rendered.' " *Id.* at 614. The trial court found the instrument to be a valid contract. This court affirmed. Though the decedent could have revoked the instrument before his death and thus defeated Sjolander's compensation, he did not. By Sjolander's full performance of his obligation until the decedent's death, the instrument became a contract enforceable against the decedent's estate.[2]

The trial court properly determined in the instant case that the check was an invalid testamentary transfer. Here the check must be construed together with the handwritten note accompanying it to ascertain the decedent's purpose. *Bank of Sheboygan v. Fessler,* 218 Wis. 244, 247, 260 N.W. 441 (1935). The trial court found that the check was not intended as a contract to pay but simply as a disposition to take effect on the decedent's death. The court's findings of fact will not be upset on review unless against the great weight and clear preponderance of the evidence. *In re Estate of Malnar,* 73 Wis.2d 192, 201, 243 N.W.2d 435 (1976). Where more than one inference can be drawn from the credible evidence, the reviewing court must accept the inferences

[2] *See also: Estate of Johnson,* 232 Wis. 556, 288 N.W. 290 (1939); *Estate of Fuhrmann, supra; Estate of Sense,* 206 Wis. 89, 238 N.W. 811 (1931).

drawn by the trier of fact. *Gehr v. Sheboygan,* 81 Wis. 2d 117, 122, 260 N.W.2d 30 (1977).

There is ample evidence supporting the trial court's determination. The note written by the decedent could not be clearer in expressing an intent to "leave" the claimant the check as a substitute for "putting [her] in the will." She believed that this way the claimant would avoid paying tax on the amount of the check. The note concerning the check evidences a hope that there will be enough left to cover it and, therefore, denies an express promise to pay a sum certain. The only evidence supporting a contrary inference is the subsequent memorandum suggesting that if asked about the check, the claimant should say that the decedent owed it to her for a long time. While there is undisputed evidence that the claimant performed valuable services for the decedent, that does not, in view of the language of the note, render the check a contract to pay $5,000 for the services. The question is beyond whether there was a consideration for a promise. The question is whether there was a promise to pay for the claimant's services.

The claimant relies on *Sheldon, supra; Sense, supra; Estate of McAskill,* 216 Wis. 276, 257 N.W. 177 (1934); and *Estate of Schoenkerman,* 236 Wis. 311, 294 N.W. 810 (1940). In *Sheldon,* as pointed out above, the court was impressed by the absolute nature of the obligation created; the decedent reserved no right to control the amount of the payment. *Sheldon,* 188 Wis. at 15. In *Sense,* this court affirmed the trial court's judgment, holding that the decedent's direction to her trustee to pay $1,000, which was available in the estate, to the claimant on her death for personal services rendered was valid as an acknowledgment of indebtedness. The language of the instrument, said the court, was inconsistent

with an intent to make a gift, testamentary or otherwise. That is not the fact situation here. Likewise in *McAskill*, this court's review of the record disclosed that the cognovit promissory notes at issue "constituted a present, definite, and absolute obligation to pay on demand." 216 Wis. at 282. On the contrary, the check and memorandum here, as the trial court found, were intended not as a contract to pay on demand but as a disposition to take effect upon death if sufficient funds were available in the account. Finally, the *Schoenkerman* case turned on whether there was consideration for certain promissory notes, not on whether there was a promise to pay.

The trial court found that it was the intent of the decedent to show appreciation for the kindnesses of the claimant and that it was the intent of the claimant to render assistance to the decedent without expectation of monetary compensation. The court determined that the parties intended and understood that the check was not to be presented for payment until after the decedent's death and paid only if there was enough in her account to pay it. Because the trial court's findings are not against the great weight and clear preponderance of the evidence, we affirm.

*By the Court.*—Order affirmed.