Steven F. KERSTEN and Kathleen G. F. Kersten, d/b/a
Kersten Real Estate, Plaintiffs-Respondents,

v.

H.C. PRANGE COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 94–0008. Submitted on briefs May 10, 1994.—Decided
June 14, 1994.*

(Also reported in 520 N.W.2d 99.)

49

50

51

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William P. Te Winkle,* of *Rohde, Dales, Melzer, Te Winkle & Gass* of Sheboygan.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *James R. Sickel,* of *Hinkfuss, Sickel, Petitjean & Long* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   H.C. Prange Company appeals a judgment that found Prange had breached its lease with Kersten Real Estate when it stopped paying rent. Prange contends that the trial court erroneously found that Prange was not constructively evicted when Kersten leased a portion of the premises to Schneider National, Inc. Prange also contends that it is entitled to a new trial because the trial court erroneously exercised its discretion in determining damages. Finally, Prange argues that the trial court's adoption of retained jurisdiction as a method for awarding future damages under the lease was contrary to Wisconsin law and should therefore be reversed. Because we reject Prange's arguments regarding constructive eviction and retained jurisdiction, we affirm these issues.

We also affirm the trial court's findings of damages, with the exception of compensation for time Kersten spent finding a sublessor and preparing for this lawsuit.

In October 1988, Prange and Livesey Co. entered into a ten-year commercial lease involving an office building. Under the lease, Prange was to occupy 35,906 square feet of office space for the first five years of the lease term, and the entire building, 56,602 square feet, for the remaining five years. In May 1990, Steven & Kathleen Kersten, d/b/a Kersten Real Estate, purchased the building and received an assignment of the rents from Livesey Co.

In October 1990, Prange informed Kersten that it would be leaving the building, and Prange asked Kersten to help secure a tenant for the premises. Kersten requested a listing contract with Prange regarding locating the replacement tenants, but Prange did not sign one.

In April 1991, Prange vacated the leased premises, but continued to pay rent. Schneider began to lease a small portion, about 13%, of the Prange space in July. There is some dispute over the circumstances surrounding the Schneider lease. Prange contends that it only granted permission for Schneider to lease part of the space for one month for storage purposes. Steven Kersten testified that he conveyed to Prange that the Schneider lease would be short term, about eighteen months, based on the completion of their new facility, and that Prange was aware in the beginning of August that Schneider's occupancy went beyond storage. Schneider remained in the building for one year, and all rents received were credited to Prange.

Before and during Schneider's occupancy, there were negotiations with A.C. Nielsen regarding the

long-term lease of the premises. During a meeting in early September 1991, Gerard Donnelly, of Prange, told Kersten that Prange wanted Schneider out of the premises by September 15. Prange verbally changed this date to October 15. Prange contends that it demanded Schneider's removal because it was concerned that Schneider's presence beyond August would frustrate the chances of leasing the premises to Nielsen or another large space user.

On October 15, 1991, Nielsen declined to lease any additional space in the building. Schneider was still occupying the premises. On October 17, Kersten received a letter from Prange telling Kersten that its lease was terminated, "based upon [Kersten's] constructive eviction of the tenant and [Kersten's] violation of Section 21 of the lease relating to quiet enjoyment." Kersten construed this as a default notice, and, in an effort to cure any default, attempted to remove Schneider. Upon notification of Kersten's effort, Prange responded with an additional letter stating that it did not matter what Kersten did with Schneider, because the lease with Prange was terminated. Subsequently, Schneider rejected Kersten's removal notice, stating that under § 704.03(2), STATS., it was a year-to-year tenant.[1] Kersten made no further attempt to remove Schneider, and credited rents received by it to Prange in order to mitigate Prange's rent obligation. Prange ceased paying rent on November 1, 1991.

---

[1] Section 704.03(2), STATS., provides in part: "If the premises in such case are used for residential purposes and the rent is payable monthly, he becomes a month-to-month tenant; but if the use is agricultural or nonresidential, the tenant becomes a year-to-year tenant without regard to the rent-payment periods."

The trial court found that (1) Prange breached the lease on November 1, 1991; (2) Kersten did not constructively evict Prange; and (3) Kersten was entitled to past damages from Prange in the amount of $492,446.95[2] and future damages to be awarded under the concept of retained jurisdiction.

## CONSTRUCTIVE EVICTION

Prange's argument regarding constructive eviction is twofold. First, Prange contends that the trial court erroneously predicated its finding that a constructive eviction did not occur on its premise that there was an agency relationship. Prange argues that because the agency issue was not raised in the pleadings and there was no express or implied consent of the parties to treat the issue as if it had been raised in the pleadings, § 802.09(2), STATS., Prange was not given the opportunity to be fully heard on the issue and there should be a new trial to allow the issue of agency to be fully tried.

First, it should be noted that Prange pled constructive eviction as an affirmative defense. Therefore, Kersten was not afforded the opportunity to respond to Prange's constructive eviction argument, and therefore could not plead the agency issue.[3] Also, the issue is

---

[2] The court's original decision dated September 8, 1993, granted judgment in the amount of $496,027.63. On November 17, 1993, a supplemental decision was issued correcting a mathematical error and granting judgment in the amount of $492,446.95.

[3] Section 802.01(1), STATS., authorizes a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, and a third-party answer, but not a reply to an affirmative defense. *See also Poeske v. Estreen*, 55 Wis. 2d 238, 245, 198 N.W.2d 625, 629 (1972).

whether Prange was constructively evicted; whether there was an agency relationship does not control the determination of whether Prange was constructively evicted.

■

Therefore, we move on to whether Prange was constructively evicted. Prange contends that the trial court's findings of fact regarding this issue were clearly erroneous, *see Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). Prange also contends that the trial court misapplied the law to the facts. The question of whether the facts fulfill a particular legal standard is a question of law which we decide independently and without deference to the trial court. *Midwest Developers v. Goma Corp.*, 121 Wis. 2d 632, 651, 360 N.W.2d 554, 564 (Ct. App. 1984).

■

Although Prange sets out the clearly erroneous standard of review, it does not elaborate on which of the trial court's findings of fact were clearly erroneous or why. Nevertheless, upon reviewing the record, we conclude that the trial court, after hearing conflicting testimony regarding Schneider's occupancy of the premises, made factual findings that are supported by the record. When the trial court acts as the fact finder, as it did here, the court is the ultimate arbiter of credibility of the witnesses when there is conflicting testimony, and the court's findings will be sustained unless they are the clearly erroneous. Section 805.17(2), STATS.

■

The trial court's findings were not clearly erroneous. Specifically, the trial court's finding that Prange gave permission for Schneider's initial occupancy, which Prange seems to question, is supported by the

letter granting such permission for the months of August and September. The trial court's finding that Prange was aware of the proposed length of the Schneider tenancy is supported by notes made by Jennifer Blackstone, a Prange vice-president, stating: "begin moving in 8/1—Schneider—short term deal 'til new building is finished." Also, the other trial court finding that Prange seems to question, that the Schneider occupancy was not the reason for A.C. Nielsen's decision to not lease the entire premises, was supported by that fact that Nielsen never made a formal proposal to lease the building, and never formally responded to proposals forwarded to it by Kersten. That the Schneider occupancy was not the deciding factor for Nielsen is also supported in the deposition of Kevin Price, an employee of A.C. Nielsen. Price stated that leasing the Prange premises was still a possibility after Schneider became a tenant. Because there is evidence in the record to support the trial court's findings, they are not clearly erroneous.

Next, Prange argues that the trial court misapplied the facts to the law when it concluded that Kersten did not constructively evict Prange. Prange maintains that Kersten breached the quiet enjoyment clause in the lease, and thereby constructively evicted Prange, by leasing part of the premises to Schneider. The general principles of constructive eviction have been stated as follows:

> It is now well established that any disturbance of the tenant's possession by the landlord, or someone acting under his authority, which renders the premises unfit for occupancy for the purposes for which they were demised or which deprives the tenant of the beneficial enjoyment of the premises, causing him to abandon them, amounts to a con-

structive eviction, provided the tenant abandons the premises within a reasonable time.

A mere slight temporary inconvenience to the tenant does not justify him in throwing up his lease. A trivial breach is not sufficient, but the breach must be substantial and of such duration that it can be said that the tenant has been deprived of the full use and enjoyment of the leased property for a material period of time . . . .

The landlord is entitled to notice . . . and has a reasonable time after notice is given to remedy the defect complained of, and until such time has elapsed the tenant has no right to quit the premises because of the alleged breach.

*First Wis. Trust Co. v. L. Wiemann Co.*, 93 Wis. 2d 258, 268, 286 N.W.2d 360, 365 (1980) (quoting *Schaaf v. Nortman*, 19 Wis. 2d 540, 543-44, 120 N.W.2d 654, 656-57 (1963)).

There was not a disturbance of Prange's possession by Kersten that deprived Prange of the beneficial enjoyment of the premises, causing Prange to abandon the premises. Prange consented to Schneider's occupancy, and even directed where Schneider would occupy within the premises. Prange never intended to reoccupy the premises itself, and never had another tenant to sublet the space Schneider occupied.

To be a constructive eviction, there has to be more than a slight temporary inconvenience. *Id.* The record supports the inference that Prange was not inconvenienced at all. Despite Prange's contention, the trial court found that Schneider's occupancy was not the reason for Nielsen's decision not to lease the premises—Nielsen continued to have an interest in leasing the building after Schneider moved in. Prange had no use for the premises itself and took no action, except to request Kersten's help, to sublease it. In fact, Schnei-

der's occupancy benefited Prange because all rents Schneider paid were credited to Prange.

Finally, Prange had no right to quit the lease because it gave Kersten neither written notice of Kersten's alleged breach of Prange's quiet enjoyment, as required by the lease, nor an opportunity to cure the alleged default, as required by the law and the lease. Prange contends that oral notice was given on September 3. If such notice did occur, it did not meet the requirements set out in the lease. The first written notice was dated October 17, 1991, and Prange discontinued rent payments on November 1. Because Kersten's placement of Schneider in the Prange premises did not inconvenience Prange or deprive it of the beneficial use of the property, we affirm the trial court's conclusion that Prange was not constructively evicted.

## AWARD OF DAMAGES

Prange next contends that it is entitled to a new trial because the trial court erroneously exercised its discretion when it failed to examine the relevant facts and law and demonstrate a rational decision-making process in reaching its conclusion. Prange also argues that a new trial should be granted because the evidence presented was insufficient to support the damages award. We disagree.

The question of what constitutes consequential damages is not a discretionary decision, but is a question of fact. *Madsen v. Threshermen's Mut. Ins. Co.*, 149 Wis. 2d 594, 606, 439 N.W.2d 607, 611 (Ct. App. 1989). This court must sustain a damage award if there is any credible evidence that under any reasonable

view supports it and removes the issue from the realm of conjecture. *White v. General Cas. Co.*, 118 Wis. 2d 433, 440, 348 N.W.2d 614, 618 (Ct. App. 1984). "Damages for breach of contract need not be ascertainable with absolute exactness or mathematical precision. The evidence is sufficient if it enables the fact-finder to make a fair and reasonable approximation." *Brogan v. Industrial Cas. Ins. Co.*, 132 Wis. 2d 229, 240, 392 N.W.2d 439, 444 (Ct. App. 1986).

Prange contends that the trial court relied solely on Kersten's summarization of damages, and such summarization did not meet evidentiary standards. Although the trial court may have used the summary to simplify its calculations, there is evidence in the record sufficient to provide a reasonable basis for the trial court's damage determination, with the exception of the amounts awarded to Kersten for his time spent attempting to obtain sublessors.

Prange contends that the trial court failed to enumerate the factors upon which it relied and the failure to set forth those factors constitutes a reversible error under *Trieschmann v. Trieschmann*, 178 Wis. 2d 538, 504 N.W.2d 433 (Ct. App. 1993). *Trieschmann* does not apply; it is a divorce case in which the award of maintenance and the division of property are within the sole discretion of the trial court. *Id.* at 541, 504 N.W.2d at 434. This case is a contract dispute and consequential damages are to be determined by the fact finder, which happens to be the trial court. *Madsen*, 149 Wis. 2d at 606, 439 N.W.2d at 611. We therefore review the entire record, not just the trial court's explanation, in determining whether there is any credible evidence to support the factual finding.

The trial court found that rents due under the contract were $201,004.93. This amount is supported

both by the lease and Steven Kersten's testimony. The amount consists of the base rent, as set out in the lease, less rents Kersten received from Schneider and Lakeland College, and interest of 12% per annum, as set out in the lease.

There are also reasonable bases for the trial court's findings of damages for common area charges, taxes, insurance and utilities. Additionally, the lease provides that the tenant is to pay the landlord a common area charge, and Kersten testified as to how the charges were calculated. The lease also provides that the tenant is to pay real estate taxes and assessments. Kersten testified as to the amount of taxes incurred, and an exhibit supporting this was admitted at trial. The lease also called for the payment of insurance charges, which were set out in one of Kersten's exhibits and testified to by Kersten.

Finally, utilities were also payable under the terms of the lease. Kersten testified as to the amount he thought Prange owed for utilities. Kersten arrived at the figure by averaging the amount for the actual bills over a nine-month period. Such testimony allowed the fact finder to make a fair and reasonable approximation of the amount Prange owed for utilities.[4] Prange contends that the amount Lakeland paid Kersten for utilities should be deducted from the amount of damages. However, because the average was determined for a time period in which Lakeland was not in the building, the damages do not include the utility costs created by Lakeland's occupancy and therefore should not be reduced by the amount of Lakeland's payments.

---

[4] Twelve percent interest was added to each of these items, as was provided for in the lease. The interest was appropriately not added to the mitigation expenses.

Prange next takes issue with the trial court's findings regarding mitigation damages. Prange first contends that the trial court erred when it found that Kersten's mitigation damages encompass costs incurred prior to November 1, 1991, the date Prange defaulted. We agree. Section 704.29(1), STATS., provides that the landlord can recover rent and damages if the tenant "unjustifiably removes from the premises prior to the effective date for termination of his tenancy *and* defaults in payment of rent." (Emphasis added.)

However, because it is undisputed that Kersten incurred the pre-default expenses in its effort to secure a tenant at Prange's request, these expenses were properly granted to Kersten. The established general rule is " 'that if a person performs valuable services for another at that other's request, the law implies . . . the making of a promise by the latter and acceptance thereof by the former to pay the one performing the service the reasonable value thereof.' " *Theuerkauf v. Sutton*, 102 Wis. 2d 176, 184, 306 N.W.2d 651, 657 (1981) (quoting *Wojahn v. National Union Bank*, 144 Wis. 646, 667, 129 N.W. 1068, 1077 (1911)). Therefore, the leasing fee of $6,500, or 10% of the Schneider lease, as well as out-of-pocket expenses Kersten incurred trying to secure a tenant were properly awarded.[5] Further, with the exception of those damages found for time Kersten spent securing a tenant and mitigating damages, we conclude that the trial court's findings of

---

[5] Prange argues that including the leasing fee in Kersten's damages is contrary to § 240.10(2), STATS., because there was no written contract to pay the commission. However, § 240.10(2) applies to contracts for the payment to a real estate broker for leasing real estate for a term exceeding three years. The Schneider lease was for only one year.

consequential damages are supported by the record and therefore are not clearly erroneous.

The first of these findings is that Kersten's damages include charges of $678.31 from "Friday's Girl" for typing services. There is testimony that this expense was incurred in Kersten's attempt to relet the premises, and the charge is supported by copies of the bills totalling $678.31 received by the trial court. Because the record supports the trial court's finding, it is not clearly erroneous.

The trial court next found that Kersten's damages included $65 an hour for time spent seeking new tenants and preparing for this lawsuit. We agree with Prange that compensation for Kersten's time is not to be included in its damages. Because "[t]he cases which discuss the type of damages available where leased premises are abandoned are relatively few," like the supreme court in *Ross v. Smigelksi*, 42 Wis. 2d 185, 195, 166 N.W.2d 243, 248 (1969), we look to what damages for mitigation efforts are recoverable when a contract other than a lease is breached. " '[I]n the case of a breach of contract, *expenditures actually made* by the nondefaulting party as a reasonable effort to minimize the losses may be recovered as a part of his damages.' " *Id.* at 196, 166 N.W.2d at 249 (quoting 22 AM. JUR. 2D *Damages* § 169 at 238-39) (emphasis added). Additionally, "in any case of a breach of contract the party injured should use reasonable diligence, and make all reasonable effort, to reduce to a minimum the damages resulting from such breach. The *necessary expenses incurred* by him in so doing may be recovered in an action for such breach." *Id.* (quoting *Poposkey v. Munkwitz*, 68 Wis. 322, 331-32, 32 N.W. 35, 39 (1887) (emphasis added)).

We conclude that Kersten is entitled only to out-of-pocket mitigation expenses and mitigation expenses provided for in the lease. This is particularly so in light of the fact that Vander Zanden Realty, not Kersten, placed Lakeland College in the premises, and the trial court found that Prange had to reimburse Kersten for the commission he paid Vander Zanden for doing so. Kersten has a duty to mitigate his damages, and § 704.29, STATS., does not contemplate him being compensated for satisfying this obligation.

With regard to Kersten's time spent prior to the default, Kersten was compensated for performing the services requested of him by Prange, finding another tenant for the building, through the 10% leasing fee charged to Prange. To compensate Kersten for his time as well would be duplicitous.

The damages found for telephone calls were supported by Kersten's testimony, records maintained by Kersten and phone bills that were available and offered to Prange at the trial. The damages found for payment of actual utility bills are supported by the fact that they were due under the lease, Kersten's testimony and copies of Wisconsin Public Services bills. Clean-up costs and advertising expenses are similarly supported through testimony and exhibits containing bills or copies of checks written.

■

The legal fees Kersten incurred are supported by the record through the lease, which provides that attorney fees are to be an element of damages, and the testimony of Kersten's attorney. Kersten's accounting fees were supported by Kersten's testimony as well as the production of business records, i.e., the bill for services. The cost of remodeling the premises to accommodate the premises for Lakeland College was

also supported through testimony and the production of bills for services. Further, remodeling costs are provided for in the lease as well as § 704.29, STATS. The commission Kersten paid Vander Zanden was also supported by testimony and the production of a bill. The interest on loans Kersten was forced to take out in order to keep up on payments of the premises are also recoverable out-of-pocket expenses: this is an out-of-pocket expense incurred as a direct result of Prange failing to pay its rent. Therefore, we conclude that all of the damages found by the trial court, except for the $33,142.85 found to compensate Kersten for his time, are supported by the record.

## RETAINED JURISDICTION

Because the lease does not expire until October 1998, the trial court retained jurisdiction over this matter for a periodic accounting to determine any additional damages in connection with Prange's breach of the lease and Kersten's duty to mitigate. Prange contends that the retained jurisdiction as a method for awarding future damages under a lease is contrary to Wisconsin law that, Prange contends, requires the lessor to bring subsequent actions under § 704.29, STATS., to recover future rents that might occur. We disagree. Because retained jurisdiction has not yet been utilized in the area of landlord-tenant law does not mean it is contrary to Wisconsin law.

In Wisconsin, a landlord is entitled to recover rent as it matures, not before. *See Schaaf*, 19 Wis. 2d at 547, 120 N.W.2d at 658. Therefore, unless the landlord waits until the expiration of the lease term, he or she has to bring supplemental proceedings to prove that additional rents have accrued and that reasonable

efforts to mitigate losses have been taken. Prange argues that Kersten should be required to bring separate claims over the length of the lease term to recover damages. We conclude that, generally, the interests of judicial economy would be better served if the original trial judge, who is already familiar with the lease terms and other facts of the case, determined additional damages, as well as whether the landlord has continued to make reasonable efforts to mitigate, as such damages accrue. As pointed out by the Utah Supreme Court, retained jurisdiction protects the tenant's interest because it does not depend on speculative projections of future events, which might result in the overestimation of the landlord's recoverable losses, *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 908 (Utah 1989), while also advancing the interest of judicial economy.

> Damage awards will be based on past events only and will take into account the landlord's mitigation efforts. This approach, therefore, should provide an incentive to the landlord to see that its mitigation duty is fulfilled, lest it be denied some of the damages it would otherwise be entitled to.

*Id.*

We note that the concept of retained jurisdiction has been used effectively in other areas of the law where a fair resolution of the matter requires that a mechanism be available for accommodating future developments.

> Examples include divorce adjudications, probate matters, providing for specific enforcement of certain long-term contracts other than realty leases, and workers' compensation matters. Kwall, [Retained Jurisdiction in Damage Actions Based on

Anticipatory Breach: A Missing Link in Landlord-Tenant Law,] 37 Case W.Res.L.Rev. at 291-328. It should be equally effective in the lease context and is well worth the minimal additional burden it may impose on the parties.

*Id.* at 909 (citation omitted). Accordingly, we affirm the trial court's decision to retain jurisdiction over these parties and this subject matter.

We affirm the trial court's finding that Prange was not constructively evicted. We conclude that all of the damages findings, except for compensation for Kersten's time, are supported by the record and therefore affirm with that exception. Accordingly, we remand with directions to adjust damages to reflect our conclusion that Kersten's time is not recoverable. Finally, we affirm the trial court's decision to retain jurisdiction over these parties and this subject matter in order to determine additional damages through the date of the supplemental proceeding and whether Kersten has fulfilled his on-going duty to mitigate.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded. Costs awarded to Kersten.