In re the estate of Roger T. Hansen:

Peggy Meegan, Appellant,

v.

Mark Netzer, Shelly Netzer, James Cole,
Ronda Cole, Mark Sillman, Wendy Sillman
and Bradley Sillman, Respondents.

Court of Appeals

*No. 2011AP325. Submitted on briefs October 12, 2011.
—Decided January 26, 2012.*

2012 WI App 20

(Also reported in 810 N.W.2d 358.)

On behalf of the appellant, the cause was submitted on the briefs of *Jeffrey M. Mayer* of *Mayer Law Office*, Lodi.

On behalf of the respondents, the cause was submitted on the brief of *Vicki Zick* of *Zick & Weber Law Offices, LLP*, Johnson Creek.

Before Vergeront, Sherman and Blanchard, JJ.

¶ 1. VERGERONT, J.   The issue on this appeal concerns the doctrine of gift causa mortis, also called gift in contemplation of death.[1] Under this doctrine, a gift made during the life of the donor becomes effective

---

[1] BLACK'S LAW DICTIONARY 757 (9th ed. 2009).

---

upon the donor's death if certain requirements are met. The circuit court concluded that Roger Hansen, the decedent, had made gifts causa mortis to three nieces and a great-nephew and therefore that property was not part of Hansen's estate. We conclude the circuit court erred because, based on the undisputed facts, there was no delivery of the gifts during Hansen's life, a requirement for a gift causa mortis. Accordingly, we reverse the order excluding this property from the inventory of Hansen's estate and remand for further proceedings.

## BACKGROUND

¶ 2. Roger Hansen died intestate at the age of eighty-eight. Within the four months preceding his death, he met with an attorney on several occasions for the purpose of making a will, but he died shortly before the appointment at his attorney's office at which he was to sign the last draft his attorney had prepared. Hansen was survived by a brother, Lyle, a sister, their children, and the children of siblings who had predeceased him.

¶ 3. During Hansen's lifetime, he made mortgage loans to Lyle's three daughters and was the vendor on a land contract with a grandson of Lyle. At the time of his death, the total outstanding debt on these four notes was approximately $278,000. Lyle, as Hansen's personal representative, included these four notes in Hansen's probate estate.

¶ 4. The debtors and their spouses (collectively, the Netzers) moved to strike the notes from the inventory on the ground that Hansen forgave these debts prior to his death and that the pardons amounted to gifts causa mortis. Therefore, according to the Netzers, these notes are not part of Hansen's estate. The Netzers

463

contended that a notation Hansen made on an early draft of his will, directions in a letter to his attorney, and Hansen's approval of the resulting revisions made by his attorney show that Hansen intended to forgive these debts. Peggy Meegan, the daughter of one of Hansen's deceased siblings, opposed the motion.[2]

¶ 5. The circuit court agreed with the Netzers and concluded that the affidavits established gifts causa mortis forgiving these debts. Therefore, the court granted the motion to strike these notes from the inventory. Meegan appeals that order.

## DISCUSSION

¶ 6. Meegan contends that the evidence does not satisfy any of the elements of a gift causa mortis for any of the four notes. Therefore, according to Meegan, the four notes are properly part of the inventory of Hansen's estate and the court erred in striking them. The Netzers respond that the circuit court correctly decided that the evidence establishes all elements of a gift causa mortis for each of the four notes.

¶ 7. Because resolution of this issue requires the application of a legal standard to undisputed facts, our review is de novo. *See Kersten v. H.C. Prange Co.*, 186 Wis. 2d 49, 56, 520 N.W.2d 99 (Ct. App. 1994).

¶ 8. In the following paragraphs we first provide background law on the doctrine of gift causa mortis and then focus on the element requiring delivery of the gift

---

[2] Because Hansen died intestate and had no surviving spouse, surviving domestic partner, issue, or parent, his estate passes to his siblings and to the issue of deceased siblings per stirpes. WIS. STAT. § 852.01(1)(d) (2009–10). All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

during the donor's lifetime. For the reasons we explain, we conclude that the undisputed facts do not establish the delivery element. Because the absence of proof of this element is dispositive, we do not decide whether the evidence establishes the other elements.

■■

¶ 9.  The general rule is that a testamentary disposition (a disposition that takes effect upon the death of the person making the disposition) must comply with the statutory requirements for the execution of wills. *See Waukesha State Bank v. Moore,* 86 Wis. 2d 593, 598, 237 N.W.2d 329 (1979).[3] There are, however, exceptions to this general rule. *See id.* A gift causa mortis has been characterized as an exception. *Will v. Vander Zanden,* 251 Wis. 90, 97, 28 N.W.2d 360 (1947) (noting that a gift causa mortis takes effect upon death and stating this doctrine "appears to be an exception to the rule against testamentary disposition except by will").

■

¶ 10.  The requirements of a valid gift causa mortis are: (1) the donor has an intention to make a gift effective at death; (2) the donor makes the gift "with a view to the donor's death from present illness or from an external and apprehended peril"; (3) the donor must die of that ailment or peril; and (4) there must be a delivery. *Id.* (citing *Hoks v. Wollenberg,* 209 Wis. 276, 243 N.W. 219 (1932)).[4]

---

[3] In order to be validly executed, a will must be in writing and signed by the testator, or in the testator's name if certain conditions are met, and it must be signed by two witnesses under conditions specified in the statute. *See* WIS. STAT. § 853.03.

[4] The Netzers refer to the "three elements" of a gift causa mortis, citing to *Hoks v. Wollenberg,* 209 Wis. 276, 243 N.W. 219

¶ 11. Although a gift causa mortis does not take effect until the donor's death, the donee has an interest in the gift during the lifetime of the donor. This interest has been described as "an inchoate title which ripens into absolute title at the donor's death from the illness or peril which [the donor] apprehended in making the gift." *Id.* at 96. Another way of expressing this concept is that a gift causa mortis is " 'a gift absolute in form, made by the donor in anticipation of [the donor's] speedy death, and intended to take effect and operate as a transfer of title only upon the happening of the donor's death.' " *Id.* (quoting *Crook v. First Nat'l Bank of Baraboo*, 83 Wis. 31, 36, 52 N.W. 1131 (1892)). The *Crook* court clarifies the meaning of "absolute" when used to describe a gift causa mortis: "The gift must be absolute, with the exception of the conditions inherent in its nature, and a delivery of the article donated is a necessary element; but it may be revoked by the donor, and is completely revoked by [the donor's] recovery from the sickness or escape from the danger in view of which it was made." *Crook*, 83 Wis. at 36.

¶ 12. Turning our attention to the delivery requirement of a gift causa mortis, we begin with the principle that this requirement is the same as it is for a

---

(1932). There the court states there are three requirements for a gift causa mortis, referring to the second, third, and fourth requirements we identify in paragraph 10. *See Hoks*, 209 Wis. at 279–80. However, before listing these three requirements, the *Hoks* court states that the donor had an intention to make a gift. *Id.* at 279. In the later case, *Will v. Vander Zanden*, 251 Wis. 90, 97, 28 N.W.2d 360 (1947), the court identifies the four requirements as we have done, with "intention to make a gift effective at death" as the first requirement. We see no inconsistency between *Will* and *Hoks*.

gift inter vivos where the subject matter of the gift is the same.[5] *Hartwig v. East Wisconsin Tr. Co.*, 223 Wis. 218, 228, 270 N.W.2d 71 (1936). Therefore, in analyzing the delivery requirement here, we may look to cases that concern gifts inter vivos as well as to cases that concern gifts causa mortis. The essential requirement for delivery of a gift is that it be "made as the nature of the subject sought to be bestowed reasonably admits." *Baltes v. Klief*, 188 Wis. 626, 629, 206 N.W. 877 (1926) (quoting *Opitz v. Karel*, 118 Wis. 527, 530, 95 N.W. 948 (1903)).

██

¶ 13.  In this case the subject matter claimed to be the gift causa mortis is the forgiveness of a debt. The forgiveness of a debt may be a gift. *Hoks v. Wollenberg*, 209 Wis. 276, 280, 243 N.W. 219 (1932). The Netzers contend, and the circuit court agreed, that delivery of the forgiveness of the debts occurred when Hanson wrote a notation on a draft of his will prepared by his attorney and delivered a letter to his attorney. Specifically, on a draft of Hansen's will prepared by his attorney, Hansen wrote: "Wendy, Shelly and Rhonda [Lyle's daughters] will have their property cleared." Then, after receiving a revised draft with that change incorporated, Hansen wrote a letter to his attorney and dropped it off at his attorney's office.

---

[5] Generally, a gift inter vivos, in contrast to a gift causa mortis, passes immediate and irrevocable title upon the gift being completed. *See Hoks*, 209 Wis. at 280. A gift inter vivos is completed when the donor delivers the subject of the gift with the intention to part with the donor's interest in the property given. *Potts v. Garionis*, 127 Wis. 2d 47, 51, 377 N.W.2d 204 (Ct. App. 1985) (citations omitted).

Dear Lan

I think the way this will has been put together looks good to me. We did however forget to include the land contract between Roger T. Hansen and Shirley P. Hansen as tenants in common and Brad Sillman [Lyle's grandson]. In the event of my death I direct that my personal representative cancel and forgive any indebtedness to me at the time of my death by Brad Sillman. This will omit my monthly payment but still have an obligation to Shirley P. Hansen.

Roger T. Hansen

¶ 14.   The Netzers' theory of delivery has two components. First, they contend that *Hoks* and *Baltes*, read together, establish that writings extrinsic to the debt instrument—writings like Hansen's notation on the draft will and the letter to his attorney—may be the means of canceling a debt, and that delivery of a gift of forgiveness of a debt may be accomplished without surrendering the debt instrument. Second, they contend that, under *Prosser v. Nickolay*, 249 Wis. 75, 23 N.W.2d 403 (1946), the gifting instruments—Hansen's notation on the draft will and his letter—may be delivered to a third-party trustee instead of directly to the donees; and, they assert, Hansen's attorney is a third-party trustee.

¶ 15.   We agree with the Netzers to the extent they argue that delivery of a gift of forgiveness of a debt may be accomplished by means other than delivering the debt instrument with signed writing on it canceling the debt. *See Hoks*, 209 Wis. at 282 (concluding that delivery requirement for a gift causa mortis canceling a debt was satisfied by the following events: the donor had a written statement prepared in which she stated that upon her

death an identified mortgage and note and "all indebtedness therein" was canceled; she signed the statement; and the statement, the mortgage, and the note were delivered to the debtor); *see also Baltes*, 188 Wis. at 628–29 (concluding that a gift inter vivos forgiving a land contract debt was complete when the vendor directed the vendee to write on the back of the his monthly check "paid in full on home at [address of the property]," and the vendor then endorsed his name on the back of the check, deposited it, and received payment in the check amount). Whether Hansen's notation on the draft will and his letter to his attorney are analogous to the writings and documents in *Hoks* or *Baltes* is a more difficult issue. However, we need not decide that issue because the more fundamental problem with the Netzers' theory is that these writings of Hansen were not delivered to the debtors.

¶ 16. *Prosser* does not support the Netzers' position that the delivery to Hansen's attorney of Hansen's notation on the draft will regarding Lyle's daughters and the letter regarding Lyle's grandson constitute delivery of the gifts of forgiveness of those persons' debts. In *Prosser*, the question presented was whether an attempted conveyance of real property was valid. *Prosser*, 249 Wis. at 76. The decedent, shortly before his death, instructed his attorney to prepare a deed conveying certain property to his wife. *Id.* The attorney did so, the decedent and witnesses signed the deed, and it was notarized. *Id.* At the time the deed was executed, the legal description of the property was not available. *Id.* The decedent instructed his attorney to obtain the proper description, insert it, record the deed, and deliver it to his wife. *Id.* The attorney took the deed to his office and inserted the proper description before the decedent's

death but did not record the deed or deliver it to the decedent's wife until after the decedent died. *Id.*

¶ 17. The validity of the conveyance was challenged on two grounds: (1) the deed was not duly executed because at the time it was executed it was missing the legal description of the property; and (2) there was no valid delivery of the deed to the decedent's wife prior to the decedent's death. *Id.* at 76–77. The court rejected both challenges, noting that the property description was later added to complete the conveyance and citing case law establishing that "a deed delivered to a third person with instructions to record it and deliver it to the grantee after the grantor's death *becomes effective upon delivery to the third person who thereafter holds as trustee for the grantee." Id.* at 77 (emphasis added) (citations omitted). Consequently, once the missing description was added, the property conveyance was complete because the deed contained all required information and the attorney held the deed as trustee for the decedent's wife. *Id.*

¶ 18. The facts in this case are not analogous to those in *Prosser.* A complete delivery occurred in *Prosser* at the point in time when the attorney held a completed deed *with instructions to deliver it to the donee. Id.* In contrast, in this case Hansen did not instruct his attorney to deliver to the debtors his notation on the draft will and the letter to his attorney. Indeed, that was plainly not the purpose for which Hansen gave his attorney these writings. Hansen's purpose for giving his attorney these writings was so that his attorney could include provisions to this effect in his will. There is no factual basis for asserting that Hansen's attorney held these writings in trust for the debtors. Thus, the delivery to the attorney, with no instruction for delivery to any debtor, does not constitute delivery to any debtor.

470

¶ 19.  We recognize that on this record it is undisputed that Hansen intended that, upon his death, the debts owed him by Lyle's daughters and grandson would be forgiven. It is unfortunate for the debtors that he died before his will to this effect was validly executed. However, the statutory requirements must be fulfilled in order for a will to be valid, regardless of the evidence of the decedent's intent. Similarly, in the absence of a valid will, testamentary dispositions must meet the particular requirements of the exception invoked—here, gift causa mortis. The delivery requirement for a gift causa mortis is not satisfied by Hansen's written instructions to his attorney to include in his will provisions forgiving the debts of his nieces and great-nephew.[6]

## CONCLUSION

¶ 20.  We reverse the court's order excluding from the inventory the three mortgage notes from Hansen's nieces and the land contract note from Hansen's great-nephew, and we remand for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

[6] Because of this conclusion it is unnecessary to resolve the parties' dispute over the circuit court's consideration of Hansen's death certificate, which Meegan asserts was submitted by the Netzers in violation of a stipulation between the parties. Evidence of the cause of Hansen's death is relevant to the requirement that the donor of a gift causa mortis die of the ailment or peril the donor contemplated at the time he or she made the gift. The death certificate is not relevant to the delivery requirement.